# McKENNON *v.* NASHVILLE BANNER PUBLISHING CO.

No. 93–1543.   Argued November 2, 1994—Decided January 23, 1995

KENNEDY, J., delivered the opinion for a unanimous Court.

*Michael E. Terry* argued the cause for petitioner. With him on the briefs were *Elaine R. Jones, Theodore M. Shaw, Charles Stephen Ralston,* and *Eric Schnapper.*

*Irving L. Gornstein* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Solicitor General Days, Assistant Attorney General Patrick, Deputy Solicitor General Bender, Kent L. Jones, Dennis J. Dimsey, Mark L. Gross, James R. Neely, Jr., Gwendolyn Young Reams,* and *Carolyn L. Wheeler.*

*R. Eddie Wayland* argued the cause for respondent. With him on the brief was *Elizabeth B. Marney.*\*

JUSTICE KENNEDY delivered the opinion of the Court.

The question before us is whether an employee discharged in violation of the Age Discrimination in Employment Act of 1967 is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds.

I

For some 30 years, petitioner Christine McKennon worked for respondent Nashville Banner Publishing Company. She was discharged, the Banner claimed, as part of a work force reduction plan necessitated by cost considerations. McKennon, who was 62 years old when she lost her job, thought another reason explained her dismissal: her age. She filed suit in the United States District Court for the Middle District of Tennessee, alleging that her discharge violated the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.* (1988

---

\*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations by *Marsha Berzon* and *Laurence Gold;* for the Lawyers' Committee for Civil Rights Under Law et al. by *William F. Sheehan, Steven R. Shapiro, Helen Hershkoff, Michael A. Cooper, Norman Redlich, Thomas J. Henderson, Richard T. Seymour, Sharon R. Vinick,* and *Cathy Ventrell-Monsees;* and for the Women's Legal Defense Fund et al. by *Judith L. Lichtman* and *Donna R. Lenhoff.*

Briefs of *amici curiae* urging affirmance were filed for the Chamber of Commerce of the United States by *Zachary D. Fasman, Charles A. Shanor, Kelly J. Koelker, Stephen A. Bokat,* and *Robin S. Conrad;* and for the Equal Employment Advisory Council et al. by *Douglas S. McDowell, Ann Elizabeth Reesman, Lee T. Paterson, Dwight H. Vincent, John F. Sturm, René P. Milam,* and *Peter G. Stone.*

*Jeffrey Robert White, Nancy Erika Smith,* and *Neil Mullin* filed a brief for the National Employment Lawyers Association et al. as *amici curiae.*

ed. and Supp. V). The ADEA makes it unlawful for any employer:

> "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U. S. C. § 623(a)(1).

McKennon sought a variety of legal and equitable remedies available under the ADEA, including backpay. App. 10a–11a.

In preparation of the case, the Banner took McKennon's deposition. She testified that, during her final year of employment, she had copied several confidential documents bearing upon the company's financial condition. She had access to these records as secretary to the Banner's comptroller. McKennon took the copies home and showed them to her husband. Her motivation, she averred, was an apprehension she was about to be fired because of her age. When she became concerned about her job, she removed and copied the documents for "insurance" and "protection." Deposition, Dec. 18, 1991, Record, Docket Entry No. 39, Vol. 2, p. 241. A few days after these deposition disclosures, the Banner sent McKennon a letter declaring that removal and copying of the records was in violation of her job responsibilities and advising her (again) that she was terminated. The Banner's letter also recited that had it known of McKennon's misconduct it would have discharged her at once for that reason.

For purposes of summary judgment, the Banner conceded its discrimination against McKennon. The District Court granted summary judgment for the Banner, holding that McKennon's misconduct was grounds for her termination and that neither backpay nor any other remedy was available to her under the ADEA. 797 F. Supp. 604 (MD Tenn. 1992). The United States Court of Appeals for the Sixth Circuit affirmed on the same rationale. 9 F. 3d 539 (1993). We

granted certiorari, 511 U. S. 1106 (1994), to resolve conflicting views among the Courts of Appeals on the question whether all relief must be denied when an employee has been discharged in violation of the ADEA and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier. Compare *Welch* v. *Liberty Machine Works, Inc.*, 23 F. 3d 1403 (CA8 1994); *O'Driscoll* v. *Hercules Inc.*, 12 F. 3d 176 (CA10 1994); 9 F. 3d 539 (CA6 1993) (case below); *Washington* v. *Lake County*, 969 F. 2d 250 (CA7 1992); *Johnson* v. *Honeywell Information Systems, Inc.*, 955 F. 2d 409 (CA6 1992); *Summers* v. *State Farm Mutual Automobile Ins. Co.*, 864 F. 2d 700 (CA10 1988); *Smallwood* v. *United Air Lines, Inc.*, 728 F. 2d 614 (CA4), cert. denied, 469 U. S. 832 (1984), with *Mardell* v. *Harleysville Life Ins. Co.*, 31 F. 3d 1221 (CA3 1994); *Kristufek* v. *Hussman Foodservice Co., Toastmaster Div.*, 985 F. 2d 364 (CA7 1993); *Wallace* v. *Dunn Construction Co.*, 968 F. 2d 1174 (CA11 1992), vacated pending rehearing en banc, 32 F. 3d 1489 (1994). We now reverse.

## II

We shall assume, as summary judgment procedures require us to assume, that the sole reason for McKennon's initial discharge was her age, a discharge violative of the ADEA. Our further premise is that the misconduct revealed by the deposition was so grave that McKennon's immediate discharge would have followed its disclosure in any event. The District Court and the Court of Appeals found no basis for contesting that proposition, and for purposes of our review we need not question it here. We do question the legal conclusion reached by those courts that after-acquired evidence of wrongdoing which would have resulted in discharge bars employees from any relief under the ADEA. That ruling is incorrect.

The Court of Appeals considered McKennon's misconduct, in effect, to be supervening grounds for termination. That

may be so, but it does not follow, as the Court of Appeals said in citing one of its own earlier cases, that the misconduct renders it "'irrelevant whether or not [McKennon] was discriminated against.'" 9 F. 3d, at 542, quoting *Milligan-Jensen* v. *Michigan Technological Univ.*, 975 F. 2d 302, 305 (CA6 1992), cert. granted, 509 U. S. 943, cert. dism'd, 509 U. S. 903 (1993). We conclude that a violation of the ADEA cannot be so altogether disregarded.

The ADEA, enacted in 1967 as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide. See Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e *et seq.* (1988 ed. and Supp. V) (race, color, sex, national origin, and religion); the Americans with Disabilities Act of 1990, 42 U. S. C. §12101 *et seq.* (1988 ed., Supp. V) (disability); the National Labor Relations Act, 29 U. S. C. §158(a) (union activities); the Equal Pay Act of 1963, 29 U. S. C. §206(d) (sex). The ADEA incorporates some features of both Title VII and the Fair Labor Standards Act of 1938, which has led us to describe it as "something of a hybrid." *Lorillard* v. *Pons*, 434 U. S. 575, 578 (1978). The substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII. See *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 121 (1985); *Lorillard* v. *Pons, supra,* at 584. Its remedial provisions incorporate by reference the provisions of the Fair Labor Standards Act of 1938. 29 U. S. C. §626(b). When confronted with a violation of the ADEA, a district court is authorized to afford relief by means of reinstatement, backpay, injunctive relief, declaratory judgment, and attorney's fees. *Ibid.;* see also *Lorillard* v. *Pons, supra,* at 584. In the case of a willful violation of the Act, the ADEA authorizes an award of liquidated damages equal to the backpay award. 29 U. S. C. §626(b). The Act also gives federal courts the

discretion to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act]." *Ibid.*

The ADEA and Title VII share common substantive features and also a common purpose: "the elimination of discrimination in the workplace." *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750, 756 (1979). Congress designed the remedial measures in these statutes to serve as a "spur or catalyst" to cause employers "to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges" of discrimination. *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 417–418 (1975) (internal quotation marks and citation omitted); see also *Franks* v. *Bowman Transp. Co.,* 424 U. S. 747, 763 (1976). Deterrence is one object of these statutes. Compensation for injuries caused by the prohibited discrimination is another. *Albemarle Paper Co.* v. *Moody, supra,* at 418; *Franks* v. *Bowman Transp. Co., supra,* at 763–764. The ADEA, in keeping with these purposes, contains a vital element found in both Title VII and the Fair Labor Standards Act: It grants an injured employee a right of action to obtain the authorized relief. 29 U. S. C. § 626(c). The private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives of the ADEA. See *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 45 (1974) ("[T]he private litigant [in Title VII] not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices"); see also *Teamsters* v. *United States,* 431 U. S. 324, 364 (1977). It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act.

The objectives of the ADEA are furthered when even a single employee establishes that an employer has discriminated against him or her. The disclosure through litigation of incidents or practices that violate national policies re-

specting nondiscrimination in the work force is itself important, for the occurrence of violations may disclose patterns of noncompliance resulting from a misappreciation of the Act's operation or entrenched resistance to its commands, either of which can be of industry-wide significance. The efficacy of its enforcement mechanisms becomes one measure of the success of the Act.

The Court of Appeals in this case relied upon two of its earlier decisions, *Johnson* v. *Honeywell Information Systems, Inc.*, 955 F. 2d 409 (CA6 1992); *Milligan-Jensen* v. *Michigan Technological Univ.*, 975 F. 2d 302 (CA6 1992), and the opinion of the Court of Appeals for the Tenth Circuit in *Summers* v. *State Farm Mutual Automobile Ins. Co.*, 864 F. 2d 700 (1988). Consulting those authorities, it declared that it had "firmly endorsed the principle that after-acquired evidence is a complete bar to any recovery by the former employee where the employer can show it would have fired the employee on the basis of the evidence." 9 F. 3d, at 542. *Summers*, in turn, relied upon our decision in *Mt. Healthy City Bd. of Ed.* v. *Doyle*, 429 U. S. 274 (1977), but that decision is inapplicable here.

In *Mt. Healthy* we addressed a mixed-motives case, in which two motives were said to be operative in the employer's decision to fire an employee. One was lawful, the other (an alleged constitutional violation) unlawful. We held that if the lawful reason alone would have sufficed to justify the firing, the employee could not prevail in a suit against the employer. The case was controlled by the difficulty, and what we thought was the lack of necessity, of disentangling the proper motive from the improper one where both played a part in the termination and the former motive would suffice to sustain the employer's action. *Id.*, at 284–287.

That is not the problem confronted here. As we have said, the case comes to us on the express assumption that an unlawful motive was the sole basis for the firing. McKennon's misconduct was not discovered until after she had been

fired. The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason. Mixed-motive cases are inapposite here, except to the important extent they underscore the necessity of determining the employer's motives in ordering the discharge, an essential element in determining whether the employer violated the federal antidiscrimination law. See *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 252 (1989) (plurality opinion) (employer's legitimate reason for discharge in mixed-motive case will not suffice "if that reason did not motivate it at the time of the decision"); *id.*, at 260–261 (White, J., concurring in judgment); *id.*, at 261 (O'CONNOR, J., concurring in judgment). As has been observed, "proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made." *Id.*, at 252 (plurality opinion) (internal quotation marks and citations omitted); see also *id.*, at 260–261 (White, J., concurring in judgment).

Our inquiry is not at an end, however, for even though the employer has violated the Act, we must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered. Equity's maxim that a suitor who engaged in his own reprehensible conduct in the course of the transaction at issue must be denied equitable relief because of unclean hands, a rule which in conventional formulation operated *in limine* to bar the suitor from invoking the aid of the equity court, 2 S. Symons, Pomeroy's Equity Jurisprudence § 397, pp. 90–92 (5th ed. 1941), has not been applied where Congress authorizes broad equitable relief to serve important national policies. We have rejected the unclean hands defense "where a private suit serves important public purposes." *Perma Life Mufflers, Inc.* v. *International Parts Corp.*, 392 U. S. 134, 138 (1968) (Sherman and Clayton Antitrust Acts). That does not mean, however, the employee's own misconduct is irrelevant to all the reme-

dies otherwise available under the statute. The statute controlling this case provides that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for [amounts owing to a person as a result of a violation of this chapter]." 29 U. S. C. § 626(b); see also § 216(b). In giving effect to the ADEA, we must recognize the duality between the legitimate interests of the employer and the important claims of the employee who invokes the national employment policy mandated by the Act. The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored. The ADEA, like Title VII, is not a general regulation of the workplace but a law which prohibits discrimination. The statute does not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees. See *Price Waterhouse* v. *Hopkins, supra,* at 239 ("Title VII eliminates certain bases for distinguishing among employees while otherwise preserving employers' freedom of choice"). In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern "for the relative moral worth of the parties," *Perma Life Mufflers, Inc.* v. *International Parts Corp., supra,* at 139, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing.

The proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case. We do conclude that here, and as a general rule in cases of this type,

neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

The proper measure of backpay presents a more difficult problem. Resolution of this question must give proper recognition to the fact that an ADEA violation has occurred which must be deterred and compensated without undue infringement upon the employer's rights and prerogatives. The object of compensation is to restore the employee to the position he or she would have been in absent the discrimination, *Franks* v. *Bowman Transp. Co.*, 424 U. S., at 764, but that principle is difficult to apply with precision where there is after-acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it. Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party. An absolute rule barring any recovery of backpay, however, would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.

Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would

have been terminated on those grounds alone if the employer had known of it at the time of the discharge. The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U. S. C. §§ 216(b), 626(b), and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses.

The judgment is reversed, and the case is remanded to the Court of Appeals for the Sixth Circuit for further proceedings consistent with this opinion.

*It is so ordered.*