

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 23, 1996

The Honorable Barry Telford
Chair
Committee on Pensions & Investments
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-417

Re: Whether Government Code section 822.201(c) constitutionally excludes from salary and wages, for purposes of determining member contributions to and computation of benefits from the Teacher Retirement System, "payments received . . . for teaching a driver education and traffic safety course" (RQ-859)

Dear Representative Telford:

In 1995 the legislature amended Government Code section 822.201(c) to exclude from a teacher's salary, for purposes of calculating contributions to and benefits from the Teacher Retirement System, payments the teacher received for teaching a driver education and traffic safety course. You question the constitutionality of this amendment. Although you do not explicitly ask us to construe the amendment, we conclude it excludes only payments a teacher receives as a supplement to his or her regular salary, probably in accordance with a contract supplemental to the teacher's regular contract. With respect to your constitutional question, we conclude that a court would apply the rational basis test to analyze whether the amendment violates the fourteenth amendment to the United States Constitution by distinguishing after-school driver education teachers from other teachers who receive supplemental pay for extra-curricular activities they perform. We do not ultimately resolve the question you raise, however, because the rational basis analysis requires the resolution of fact questions.

We begin by examining relevant provisions of title 8 of the Government Code, subtitle C, of which section 822.201--the section about which you ask--is a part. Title 8, subtitle C establishes the Teacher Retirement System of Texas, *see* Gov't Code § 821.003; *see also* Tex. Const. art. XVI, § 67(b)(1), and provides that every employee of the public school system shall be a member, Gov't Code § 822.001(a)(2), (b). In certain circumstances not relevant here, an employee may be excepted from the membership requirement.[1] *Id.* § 822.002(a).

---

[1] An employee is excepted from the membership requirement if the employee has executed and filed a waiver, participates in an optional retirement program, or is employed by a public institution of higher education that as a condition of employment requires the employee to be enrolled as a student at the institution; or if the employee's sole employment is as a noncertified instructor in a technology

Section 822.201(a) of the Government Code provides in general that only a member's salary and wages for service are subject to report and deduction for member contributions. Likewise, only a member's salary and wages are credited in benefit computations.[2] Gov't Code § 822.201(a)(1). The statute defines the phrase "salary and wages" as:

> (1) normal periodic payments of money for service the right to which accrues on a regular basis in proportion to the service performed;
>
> (2) amounts by which the member's salary is reduced under a salary reduction agreement authorized by [Government Code section 610.021];[3] and
>
> (3) amounts that would otherwise qualify as salary and wages under Subdivision (1) but are not received directly by the member pursuant to a good faith, voluntary written salary reduction agreement in order to finance payments to a deferred compensation or tax sheltered annuity program . . . or to finance benefit options under a cafeteria plan . . . .

*Id.* § 822.201(b) (footnote added).

The statute expressly excludes from salary and wages

> expense payments, allowances, payments for unused vacation or sick leave, maintenance or other nonmonetary compensation, fringe benefits, deferred compensation other than as provided by Subsection (b)(3), compensation that is not made pursuant to a valid employment agreement, *payments received in the 1995-1996 or a subsequent school year for teaching a driver education and traffic safety course*, and any compensation not described in Subsection (b).

---

(footnote continued)

education program or the employee has retired under the retirement system and not been reinstated to membership. Gov't Code § 822.002(a).

[2]The Teacher Retirement System advises that the basic standard annuity is calculated using the following formula: two percent × years of service credit × best three years' average salary.

[3]Government Code section 610.021(a) authorizes a school district to contract with an employee to reduce the "periodic compensation paid the employee . . . by an amount to be paid for child care expenses."

*Id.* § 822.201(c) (emphasis added).   The Seventy-fourth Legislature amended section 822.201(c) by adding the italicized language. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 35, 1995 Tex. Sess. Law Serv. 2207, 2487.

The conference committee on the bill, Senate Bill 1, added the amendment to section 822.201(c).  No comments were made on the floor of the House or Senate or in any written materials regarding the amendment.  We are, as a consequence, uncertain as to the problem the legislature was seeking to remedy by the amendment.[4]

Although you do not specifically ask us to construe the amendment, we believe it is a necessary preface to considering the constitutionality of the amendment.   We hypothesize that a public school may employ different types of driver training teachers.[5] The first type teaches driver education during the regular school day, and the teacher's regular salary compensates him or her for teaching driver training, possibly among other

---

[4]In a memorandum to this office, the Teacher Retirement System (the "TRS") speculates that the legislature may have amended section 822.201(c) of the of the Government Code "to prevent salary credit manipulation." The TRS explains:

> Defined benefit pension plans such as TRS typically use an average salary factor in computing retirement benefits.  Many rely upon a relatively short term salary average derived from years occurring generally at the end of an employee's career when salaries are highest.  This provides an income replacement benefit that more likely will support a career employee's standard of living at retirement as well as reflect inflationary changes over the employee's career.

> Such terminal salary average formulas may be subject to manipulation if the employee is able to have a disproportionately large amount paid as creditable salary for a relatively brief period immediately before retirement.  TRS laws and rules have recognized this problem in the past and have included measures to minimize such manipulation.  TEX. GOV'T CODE ANN. § 825.210; 34 TEX. ADMIN. CODE § 25.30-.31.

Section 825.210 of the Government Code, which the TRS cites, prohibits a trustee or employee of the TRS from having an interest in the gains from investments made with the TRS's assets, except that the trustee or employee may have an interest in the retirement assets as a member of the TRS.  Section 25.30 of title 34 of the Texas Administrative Code, which the TRS also cites, excludes from annual salary compensation any payments and benefits provided to a TRS member "for service as an employee or a consultant with a Texas public educational institution for which no TRS member contributions have been or should have been made." 34 T.A.C. § 25.30(a), (b).  Section 25.31 of the same title generally excludes from credited compensation for "each of the last five creditable years of service before retirement" an amount that exceeds "the credited compensation of the immediately preceding creditable year for service in the same or similar positions by more than 20%." *Id.* § 25.31(a).

[5]We recognize that a public school may offer a driver training course from a privately owned and operated, licensed driver training school. *See* V.T.C.S. art. 4413(29c), § 10B.  We presume that the teacher of such a course is an employee of the licensed driver training school, not an employee of the school district.  Clearly, an employee of a licensed driver training school is ineligible for membership in the Teacher Retirement System.

subjects or tasks. *See* Educ. Code § 29.902 (requiring Texas Education Agency to establish program of instruction in driver education and traffic safety for public school students); 19 T.A.C. §§ 75.121 (setting standards for driver education classroom and in-car instruction), .312 (establishing requirements for teacher certification in driver education). The teacher does not receive a payment, supplemental to his or her annual salary, for teaching driver training, but teaches driver training pursuant to his or her written, regular contract with the school district.

The second type receives a payment, supplemental to his or her annual salary, for teaching driver training. Presumably, the second type of driver training teacher may teach subjects other than driver training during the day, but teaches driver education after school and during the summers. *See infra* note 6 (quoting from brief of Texas Classroom Teachers' Association). Generally, we imagine that a teacher who teaches driver education in return for a supplemental payment does so pursuant to a supplemental contract independent of the teacher's regular contract with the school district.

The legislature directs that every part of a statute is to be effective, if the statute can be so construed. Gov't Code § 311.021(2). A court must attempt to construe a statute as a whole, harmonizing the statute in its entirety. 67 TEX. JUR. 3D *Statutes* § 125, at 715-17 (1989). Accordingly, we cannot construe section 822.201(c) of the Government Code in isolation; we also must consider other relevant sections of chapter 822, such as section 822.001(a).

Section 822.001(a) clearly mandates that membership in the Teacher Retirement System includes all employees of the public school system (assuming the employee is not excepted under section 822.002(a)). An employee who teaches driver training is not explicitly excluded. Consequently, an employee of a school district who teaches driver training and whose salary compensates him or her for teaching driver training must be a member of the Teacher Retirement System, assuming the teacher otherwise qualifies. That teacher's salary and wages, which compensate the teacher, at least in part, for teaching driver training, are salary and wages subject to report and deduction for member contributions and to credit in benefit computations.

Nevertheless, we believe that the legislature intended to distinguish between salary a teacher receives to compensate the teacher for teaching driver training during the regular school day, pursuant to a regular contract, from a payment another teacher receives, in addition to the teacher's regular salary, probably pursuant to a supplemental contract independent of the regular contract. The latter teacher remains a member of the Teacher Retirement System, with the teacher's contributions and benefits premised upon his or her regular salary. Payments the teacher receives, over and above his or her annual salary, for teaching driver training may not be used to contribute to and compute benefits from the Teacher Retirement System, however.

By construing the phrase "payments received . . . for teaching a driver education and traffic safety course" in section 822.201(c) to apply only to payments received in addition to regular salary, we believe it describes an exclusion from salary and wages that is similar to the other items section 822.201(c) explicitly excludes from salary and wages. For example, expense payments, allowances, and fringe benefits all are payments a school district employee receives in addition to his or her regular salary. Conversely, if we construed section 822.201(c) to exclude from salary and wages even payments a teacher receives as part of the teacher's regular salary and under the regular contract, the phrase "payments received . . . for teaching a driver education and traffic safety course" would describe an exclusion much different from the other items expressly excluded from salary and wages.

Additionally, this conclusion is consistent with the legislature's choice of language in the 1995 amendment. In particular, we note that the legislature described the compensation received for teaching driver training as a "payment." Some of the other payments referred to in section 822.201(c) are described as "compensation." The term "compensation" encompasses salary and benefits. See Attorney General Opinion JM-39 (1983) at 3; Letter Opinion No. 94-72 (1994) at 2. In our opinion, the legislature has distinguished between the salary a teacher receives for, in whole or in part, teaching driver training and a payment a teacher receives, in addition to his or her salary, for teaching driver training. See also 37 T.A.C. § 25.21 (excluding various supplemental payments from annual compensation for purposes of Teacher Retirement System).

Having construed the 1995 amendment to section 822.201(c) of the Government Code, we turn to your question regarding the constitutionality of the amendment. You specifically question whether the amendment violates the Fourteenth Amendment of the United States Constitution "or any other provision of the federal or state constitution." Because you state that the amendment appears to discriminate "in teacher retirement system benefits because of course content," we understand your Fourteenth Amendment concern to be directed to the Equal Protection Clause.

In Attorney General Opinion JM-401 (1985), this office discussed the proper standard to be used when considering whether a particular statute complies with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution:

> In reviewing legislation under the equal protection clause of the Fourteenth Amendment, the United States Supreme Court usually has used two primary standards. If a challenged law burdens an inherently "suspect" class of persons or impinges on a "fundamental" constitutional right, the law will be struck down unless the state demonstrates that the law is justified by a compelling need. If a suspect class or fundamental right is not involved, the law will be upheld unless the challenger can show that the classification bears no rational relationship to a legitimate state purpose or objective. . . . On

> a few occasions, the court also has utilized an intermediate test which asks whether the challenged law furthers a substantial interest of the state.

*Id.* at 3-4 (citations omitted).

A teacher who receives payments, over and above the teacher's salary, for teaching driver training is not a member of a suspect class.[6] *See Regents of the Univ. v. Bakke*, 438 U.S. 265, 306 (1978) (race and ethnic origin). Such a teacher also is not a member of a classification warranting an intermediate level of scrutiny. *See Lalli v. Lalli*, 439 U.S. 259, 265 (1978) (illegitimacy); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (gender). In addition, assuming the contribution to and receipt of benefits from a retirement system is a "right" at all, the inclusion of a payment for teaching driver training classes in the calculation of such contributions and benefits is not a fundamental right. *See, e.g., Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) (free exercise of religion); *Shapiro v. Thompson*, 394 U.S. 618, 630 (1969) (interstate travel); *Griswold v.*

---

[6]In its brief to this office, the Texas Classroom Teachers' Association (the "TCTA") alleges that the legislature, by singling out "driver education and traffic safety training" teachers in section 822.201(c), has discriminated on the basis of age. The TCTA explains: "The teachers [are] ostensibly assigned to teach [driver training] classes, which are less demanding, and at the same time receive a stipend in addition to their regular salary. Thereby, teachers near retirement could accumulate time at a higher salary level during the years used for calculating retirement benefits." *See generally supra* note 4.

In particular, the TCTA contends that the amendment to section 822.201(c) effects a violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. ch. 14. The ADEA prohibits an employer from discriminating against any individual because of the individual's age. 29 U.S.C. § 623(a)(1). This antidiscrimination mandate applies to the compensation an individual receives, as well as the terms, conditions, or privileges of employment. *Id.* The ADEA does not, however, forbid an employer to distinguish on the basis of age if the distinction is based on reasonable factors other than age. *Id.* § 623(f)(1).

The ADEA generally prohibits an employer from establishing or maintaining a defined benefit plan under which an employee's benefit accrual is ceased or the rate of benefit accrual is reduced because of the employee's age. 29 U.S.C. § 623(i)(1)(A). In addition, an employer may not establish or maintain a defined contribution plan that ceases allocations to an employee's account or that reduces the rate at which the plan allocates money to the employee's account because of age. *Id.* § 623(i)(1)(B). We will assume for purposes of this opinion that the 1995 amendments to section 822.201(c) of the Government Code cease benefit accrual, reduce the rate of benefit accrual, cease allocations to an employee's account, or reduce the rate at which amounts are allocated to an employee's account. *See* 29 U.S.C. § 623(i).

We remain uncertain as to whether the classification of driver training teachers discriminates on the basis of age. Moreover, if the 1995 amendment to section 822.201(c) of the Government Code distinguishes among teachers on the apparent basis of age, we are uncertain as to whether the legislature in fact made the distinction on any reasonable factor other than age. *See* 29 U.S.C. § 623(f)(1); *Hazen Paper Co. v. Biggins*, 113 S. Ct. 1701, 1705 (1993); *cf. McKennon v. Nashville Banner Publishing Co.*, 115 S. Ct. 879 (1995). The resolution of these questions turns on facts; the question thus is inappropriate to the opinion process. *See, e.g.,* Attorney General Opinions DM-337 (1995) at 7, DM-98 (1992) at 3, H-56 (1973) at 3.

*Connecticut*, 381 U.S. 479, 482 (1965) (privacy); *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964) (suffrage); *Griffin v. Illinois*, 351 U.S. 12, 17 (1956) (access to courts). *See generally San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973) (determination of whether something is fundamental right "lies in assessing whether" Constitution explicitly or implicitly guarantees it). Accordingly, a court would apply the rational basis test to determine whether the amendment to section 822.201(c) is constitutional.

Under that test, a court would uphold the amendment unless a challenger to the statute shows that the classification bears no rational relationship to a legitimate state purpose or objective. We have been unable to ascertain the legislative purpose for this amendment. We are further unable to determine why the legislature chose to distinguish between a teacher who receives a payment, in addition to his or her regular salary, for teaching driver training and a teacher who may receive a supplemental payment for other, nonsalaried, school-related work he or she performs, for example, coaching, sponsoring a club, driving a bus, or directing the school play.

In any event, whether there is a legitimate state purpose or objective for excluding a payment received outside of a teacher's regular salary for teaching driver training classes from the salary used to calculate a member's contributions to and benefits from the Teacher Retirement System, as the amendment to section 822.201(c) does, while not excluding similar payments a teacher receives for performing other extra-curricular functions, is a fact question that is inappropriate to the opinion process. *See, e.g.*, Attorney General Opinions DM-337 (1995) at 7, DM-98 (1992) at 3, H-56 (1973) at 3. Likewise, whether the amendment reasonably relates to that purpose is a fact question that cannot be resolved in the opinion process.

## S U M M A R Y

Section 822.201(c) of the Government Code, which, among other things, excludes from compensation that may be used to contribute to and calculate benefits from the Teacher Retirement System "payments received . . . for teaching a driver education and traffic safety course," applies only to payments a driver training teacher receives for teaching driver training in addition to the teacher's regular salary, perhaps pursuant to a supplemental, independent contract.

Whether there is a legitimate state purpose for excluding a payment received outside of a teacher's regular salary for teaching driver training classes from the salary used to calculate a member's contributions to and benefits from the Teacher Retirement System, as the amendment to section 822.201(c) does, while not excluding similar payments a teacher receives for performing other extracurricular functions, is a fact question. Likewise, whether section 822.201(c) actually relates to that purpose is a fact question.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General