ERVIN, Circuit Judge,
dissenting:
Because of the procedural posture of the case, we must assume that TLLI refused to hire Egbuna in retaliation for his participation in a co-worker’s Title VII action and that TLLI, when it engaged in its retaliation, was unaware that Egbuna was without authorization to work in this country. The question, then, is whether an undocumented alien can ever prove a prima facie ease of employment discrimination. Perceiving a conflict between IRCA’s proscription of hiring undocumented aliens and federal employment discrimination statutes, the majority holds that employers cannot be held accountable under Title VII for adverse employment actions taken against undocumented aliens. For a number of reasons, the majority’s analysis is misguided.
First, there is no conflict between IRCA and Title VII. Nothing in IRCA suggests that Congress intended to limit the rights of undocumented aliens under federal labor and anti-discrimination laws. To the contrary, the legislative history explicitly cautions that IRCA should not be interpreted as extinguishing an undocumented alien’s rights under these statutes:
[T]he committee does not intend that any provision of this Act would limit the powers of State or Federal labor standards agencies such as the ... Equal Employment Opportunity Commission ... to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by these agencies.
House Comm, on Educ. and Labor, H.R.Rep. No. 99-682(II), at 8-9 (1986), reprinted in 1986 U.S.C.C.A.N. 5757, 5758.[1] Because Egbuna was denied employment in retaliation for “engaging in activities protected by [the EEOC],” see id., I think it obvious, as a matter of congressional intent, that IRCA does not operate as a bar to Egbuna’s claim.
Second, the majority’s opinion defeats Congress’s desire to eradicate employment discrimination in which an employer retaliates against an employee, or former employee, for participating in a Title VII investigation. The pertinent question in anti-discrimination cases is whether the employer was motivated by a discriminatory animus at the time of the adverse employment action against the employee. This is the clear holding of a unanimous Supreme Court in McKennon v. Nashville Banner *189 Publ’g Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). McKennon held that after-acquired evidence of a legitimate basis for an employee’s termination could not shield an employer from liability under the Age Discrimination in Employment Act (“ADEA”).[2] The Court found that after-acquired evidence was relevant only to the question of the remedy to which the employee was entitled. Id. at 360-62, 115 S.Ct. 879. The Court’s decision was based on the value of effectuating the purpose of the ADEA: “the elimination of discrimination in the workplace.” Id. at 358, 115 S.Ct. 879. “The disclosure through litigation of incidents or practices which violate national policies respecting nondiscrimination in the work force is itself important.... The efficacy of[the ADEA’s] enforcement mechanisms becomes one measure of the success of the Act.” Id. at 358-59, 115 S.Ct. 879. Following the Court’s reasoning in McKen-non, TLLI should be held liable if it is found to have retaliated against Egbuna in violation of Title VII. The question of Egbu-na’s work authorization is one that is pertinent only to the remedy to which he may be entitled, and not to whether TLLI acted with discriminatory animus in its employment decision making.
Third, as the Eleventh Circuit observed in the context of the Fair Labor Standards Act (“FLSA”), enforcement of federal employment laws actually reinforces and strengthens laws, such as IRCA, that aim to stop illegal immigration. See Patel v. Quality Inn South, 846 F.2d 700 (11th Cir.1988).
If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA....' By reducing the incentive to hire such workers the FLSA’s coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA.
Id. at 704-05. The majority’s decision, in effect, relieves employers of their obligation to comply with federal employment laws, other than penalties under IRCA, with regard to any undocumented workers they might employ. This interpretation of IRCA may provide an employer with an economic incentive to hire undocumented workers and, therefore, not only fails to effectuate the anti-discrimination provisions of Title VII, but also works against IRCA’s goal of curtailing illegal immigration.[3]
Finally, the majority’s decision presumably reaches beyond Title VII and extinguishes an undocumented alien’s rights under the ADEA and the Americans with Disabilities Act, both of which require that an employee be “qualified” in. order to hold an employer liable for unlawful discrimination. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir.1995) (requiring that applicant prove “she was qualified for a job” as part of the ADEA prima facie case) (emphasis added); 42 U.S.C. § 12112(a) (1994) (providing that “[n]o covered entity shall discriminate against a qualified individual with a disability”) (emphasis added). Under the majority’s reasoning, I assume’ that undocumented aliens are also no longer considered to be “employees” for purposes of the National Labor Relations Act (“NLRA”) and the FLSA since the majority holds that IRCA “statutorily disqualifies any undocumented alien from being employed as a matter of law.” Maj. op. at 187 (emphasis added). Such a view is not only at odds with Congress’s unambiguous intent, as articulated in the legislative history, but with every court that has considered IRCA’s effect on federal labor laws. See NLRB v. A.P.R.A. Fuel Oil Buyers Group, Inc., 134 F.3d 50, 56 (2d Cir.1997) (NLRA applies to undocumented aliens); Del Rey Tortilleria, Inc. v. NLRB, 976 F.2d 1115, 1121 (7th Cir.1992) (NLRA applies to undocumented aliens); Patel, 846 F.2d at 704-05 (FLSA applies to undocumented aliens); EEOC v. Tortilleria “La Me *190 jor”, 758 F.Supp. 585, 590-91 (E.D.Cal.1991) (Title VII applies to undocumented aliens).[4]
The majority’s decision is contrary to the unambiguous intent of Congress in IRCA as revealed in the legislative history, the anti-discrimination aims of Title VII, the immigration policy Congress sought to advance through IRCA, and the unanimous caselaw from our sister circuits. For these reasons, I respectfully dissent. I am authorized to state that Judges Murnaghan, Michael, and Motz join in this dissent.

. This understanding of IRCA is echoed in the report for the House Committee on the Judiciary. See H.R.Rep. No. 99-682(I), at 58 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5662 ("It is not the intention of the Committee that the employer sanctions provision of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by existing law.”).

. Analysis of the McDonnell Douglas burden-shifting scheme in ADEA cases applies with equal force to claims under Title VII. Gillins v. Berkeley Elec. Coop. Inc., 148 F.3d 413, 416 n.* (4th Cir.1998).

. The above three arguments are more fully set forth in my opinion for the panel in this case. See Egbuna v. Time-Life Libraries, Inc., 95 F.3d 353 (4th Cir.1996), vacated (Dec. 17, 1996).

. While these cases disagree about the remedies that might be available to an undocumented alien, in particular whether IRCA forbids a back-pay award, compare A.P.R.A. Fuel Oil, 134 F.3d at 56-58 (awarding backpay), with Del Rey, 976 F.2d at 1121-22 (refusing to award backpay), all these cases agree that undocumented aliens’ right to proceed under federal labor and antidiscrimination laws survives IRCA.