[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 8, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12460

_____

D.C. Docket No. 03-01041-CV-M-N

BONNIE BRACKETT,

                                          Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF TRANSPORTATION,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(November 8, 2006)**

Before EDMONDSON, Chief Judge, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

In this case, African-American appellant Bonnie Brackett (Brackett) appeals the district court's grant of judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure[1] in favor of appellee Alabama State Department of Transportation (ALDOT), at the close of evidence at trial. Brackett's alleged disparate treatment under Title VII of the Civil Rights Act of 1964, as amended, is that ALDOT denied her a promotion to the position of civil engineer (CE) in 2000 based upon her race.[2] 42 U.S.C. § 2000e *et seq*.

In granting the Rule 50 motion, the district court concluded that, although Brackett had arguably established a *prima facie* case of racial discrimination under Title VII, she had failed to present any evidence of pretext to rebut ALDOT's legitimate non-discriminatory reasons for promoting Jenny Williams (Williams), a

---

[1] Fed.R.Civ.Proc. 50 provides in pertinent part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The rule "authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." *Advisory Notes*, Fed.R.Civ.Proc. 50.

[2] Brackett specifically complains that she "has been adversely affected by discrimination involving unfair promotion practices, compensation, assignments, and other terms and conditions of employment as a result of ALDOT's failure to remedy systemic employment discrimination on the basis of race."

Caucasian female, rather than Brackett to the position. We affirm the judgment of the district court.

## I.

Brackett worked for ALDOT as a temporary clerical aid sporadically from May 1991 to July 1994. In 1994, she accepted permanent employment with ALDOT as an engineering assistant (EA) in the transportation planning bureau. Brackett's immediate supervisor was Emmanuel Oranika, an African-American male. Her bureau chief was George Ray, a Caucasian male.

In 1999 and 2000, ALDOT solicited applications to establish a pool of candidates from which to make current and future appointments to the merit system CE position. The position required as a minimum a high school diploma and "eight years experience at the [EA] level." In response to its solicitations for the CE position, ALDOT received approximately 20,000 applications.

In 1999, after serving five years as an EA, three years short of the minimum requirement, Brackett applied for CE promotion. Oranika allegedly told Brackett that she would need to submit her application to each of the bureau chiefs of the particular bureau in which she would like to be considered for employment.[3] Brackett submitted her application to her bureau chief, Ray, and to the two bureau

---

[3] Oranika testified that he did not recall such a discussion with Brackett.

chiefs of the multimodal and design bureaus.  However, it is undisputed that Brackett failed to follow the requirements set forth in the job advertisement instructing applicants to send their applications to a particular address.

As it turned out, apparently none of the three bureau chiefs forwarded Brackett's application on to the state personnel department.[4]  As a result, her application was not reviewed for minimum qualifications in 1999, she was not interviewed or hired for the position, and was not notified that the position had been filled.

In 2000, Williams was hired as CE in the multimodal bureau.  Williams had been employed as an EA with ALDOT for only two months, but had twelve years prior employment with ALDOT in two different positions.  These other two positions qualified as "out of class" duties performed, the equivalent of experience at the EA level.

Robert Jilla (Jilla), the selecting ALDOT official for the position of CE, testified that he did not review Brackett's application and that he selected Williams because she was the best qualified applicant of the applications that he

---

[4] Ray, with forty-six years experience with the department, testified that Brackett was not qualified for the CE position when she applied; that he was amazed that she had the "audacity" to apply for the CE position; and that at best, she was only a "marginal employee."  He claimed to have put her application in his desk drawer, acknowledging that the proper procedure was to send applications downtown to the state personnel department.

reviewed. There was no evidence presented at trial that Jilla even knew, at the time he selected Williams, that Brackett had applied.

Ronald Green, ALDOT's personnel director, testified that Brackett was not minimally qualified for the position of CE at the time she applied.[5] Brackett's own witness, Donna Price (Price), Caucasian female, testified at trial that she too was not selected for CE promotion; that she did not think Williams' selection was based on her Caucasian race, nor that Brackett's non-selection was based upon her African-American race. When questioned by her own counsel whether Brackett thought she was not selected for the position because of her race, Brackett replied that she could not "read [Jilla's or Ray's] mind" and "didn't know what [they] thought." On cross examination, Brackett conceded that she failed each bureau's examination administered in the CE Minimal Qualifications Booklet.

## II.

Brackett filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that ALDOT had violated her civil rights under Title VII.[6] In 2003, Brackett filed suit. For purposes of this appeal,

---

[5] Green testified at trial that, of the approximate 20,000 applications received by his office, they then were subjected to a minimum qualification (MQ) screening, before any of those applicants could, in turn, be recommended for employment.

[6] In his affidavit, Steve Dukes, personnel analyst for the state personnel department, stated that Brackett's application was reviewed for minimum qualification in October 2001 and

the district court granted ALDOT's motion for summary judgment with respect to Brackett's 1999 application and denied ALDOT's motion for summary judgment with respect to Brackett's 2000 application. The case proceeded to jury trial on the 2000 application. At the close of its case at trial, ALDOT moved for judgment as a matter of law and its motion was granted. This appeal follows.

## III.

The sole issue in this appeal is whether the district court erred in granting judgment as a matter of law to ALDOT as Brackett did not prove that ALDOT's legitimate, non-discriminatory reasons for failing to promote her to CE were pretextual and racially discriminatory.

## IV.

We review *de novo* the district court's grant of a motion for judgment as a matter of law, applying the same legal standard as the district court. *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006).

## V.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges

---

such review indicated that, at that time, she was still eight months short of the required eight years experience at the EA level.

of employment, because of such individual's race." 42 U.S.C. § 2000-2(a)(1). In order to establish a *prima facie* case of disparate treatment in the failure-to-promote context, a plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was rejected in spite of her qualifications; and (4) the employer promoted an individual outside of the plaintiff's protected class, or else continued to attempt to fill the position. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998).

"[I]f the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." *See Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006). If the defendant is successful, the burden shifts back to the plaintiff, who must show that the employer's proffered reason is pretext for discrimination. *Id*.

We have carefully studied the entire trial transcript, exhibits of parties and record in this case, including the briefs, and considered the assertions made by counsel at oral argument. We can find no evidence of racial discrimination in the record. Brackett offers no evidence that race played any role in the selection process whatsoever. She merely alleges in a conclusory fashion that ALDOT did not promote her to CE in 2000 because she is an African-American. *See Brooks*,

7

446 F.3d at 1162.

It is clear that Brackett prepared an application and passed it on to Ray and to at least two other bureau chiefs. Further, it is apparent that Ray, appraising Brackett's application as unqualified, put it aside.[7] Brackett does not prove that, in putting her application aside, Ray acted with racially discriminatory motive or intent. She also failed to follow proper filing procedure in the job advertising instructions.

Of the 20,000 applications reviewed by the state personnel department for minimal qualifications, presumably some were found not qualified and others found to be qualified. There is no evidence of the racial make up of the "qualified" or the "not qualified" applicants.

Jilla was the authorized ALDOT decision maker. Brackett does not prove that Jilla acted with racially discriminatory motive or intent. Jilla did not discriminate against Brackett. He made no decision respecting Brackett. He did not have her application before him. Furthermore, there is no evidence in the record to indicate that the reason Jilla did not have Brackett's application before

---

[7] The actions of the other two bureau chiefs are not explained, but they must not have forwarded Brackett's application either as there is no evidence that it was ever received by state personnel.

him was based upon discriminatory reasons.[8]

Brackett provides no racial analysis of the 20,000 applicants for the job. How many were white? How many were black? How many whites were actually selected as CE's? How many blacks were actually selected as CE's? [9]

None of the witnesses and none of the documents introduced at trial *even hint at the notion* that Brackett wasn't promoted because she was African-American. There is no evidence of racial animus. Brackett just wasn't qualified for the job. No pretext is shown. *See Brooks*, 446 F.3d at 1162.

## VI.

Therefore, we conclude that the district court properly granted the motion

---

[8] Jilla was not even aware of Brackett's application until after the appointment of Williams to the CE position. Therefore, we consider the case of *McKennon v. Nashville Banner Pub'l. Co.*, 115 S.Ct. 879 (1995). In *McKennon*, the employment termination was an act of discrimination violating the Age Discrimination Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The employer was guilty of discrimination at the time of discharge. A valid reason for the employee's discharge was discovered long after the employee had been terminated. However, the employer alleged that after acquired evidence of improper conduct, a valid reason for discharge, "white washed" the discrimination. The Court held to the contrary. *Id*.

Here there is no showing, that, when the employment action was taken, it was tainted by unlawful discrimination. Jilla is not shown to have based any action upon racial bias. He did not have Brackett's application to consider. As it turned out, the application showed Brackett did not meet the minimum qualifications of CE. There was no prior act of discrimination to be "white washed." *Id*. ALDOT did not undertake to replace unlawful discriminatory action with after-discovered evidence of Brackett's lack of minimum qualification. *Id*.

[9] There is no evidence of the racial make up of these applicants; of the racial make up of those eliminated for lack of minimum qualifications; of the racial make up of those forwarded from the state personnel to the ALDOT decision maker; nor of the racial make up of those ultimately achieving appointment to CE positions through ALDOT.

9

for judgment as a matter of law in favor of ALDOT because Brackett did not carry her burden in showing pretext. For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**