971 A.2d 443 (2009)
407 N.J. Super. 395
Diane REDVANLY, Plaintiff-Appellant,
v.
AUTOMATED DATA PROCESSING, INC., and Richard Feeney, Defendants-Respondents.
No. A-4082-06T2.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2008.
Decided June 2, 2009.
*444 John L. Shahdanian II, Secaucus, argued the cause for appellant (Chasan, Leyner & Lamparello, attorneys; Mr. Shahdanian, of counsel and on the brief).
Dennis Calo, Hackensack, argued the cause for respondents (Calo Agostino, attorneys; Mr. Calo, on the brief).
Before Judges A.A. RODRÍGUEZ, PAYNE and WAUGH.
The opinion of the court was delivered by
*445 RODRÍGUEZ, A.A., P.J.A.D.
Diane Redvanly appeals from a jury verdict of no cause of action in her Conscientious Employee Protection Act[1] (CEPA) claim against her former employer, Automated Data Processing, Inc. (ADP), and her supervisor, ADP Vice President Richard Feeney. Redvanly contends that evidence of her cessation of employment with a prior employer, NYNEX Mobile Communications, Inc. (NYNEX) was inadmissible, that it unduly prejudiced the jury, and that admission of the evidence warrants a new trial on the merits of her case. We agree in part and reverse.
ADP hired Redvanly in 1996 to be the Regional Controller for ADP's East National Service Center in Clifton. Feeney, a General Manager of the region, was Redvanly's direct supervisor. After working for ADP for several years, Redvanly attended a seminar in December 2002 on the Sarbanes-Oxley Act,[2] which requires that corporations put internal controls in place to ensure financial accountability. As a result of what she learned at the seminar, Redvanly informed Feeney by email on January 9, 2003, that in preparing an upcoming Internal Control Audit, she intended to disclose ADP's alleged acts of over billing clients, improper billing related to a specific product series, pressure on Redvanly to accede to the input of inflated billing, and manipulation of ADP quality survey scores. Feeney's email response did not address the issues raised in Redvanly's email message but did suggest another potential ethical issue that might be included in the audit.
The next day, Feeney asked Redvanly to attend a meeting to discuss issues relating to a former ADP employee. The meeting was also attended by Marie Hildebrandt, the Regional Director of Human Resources. After the former employee was discussed, the meeting became hostile. According to Redvanly, there was "a profanity-laced, verbal assault" upon her by Feeney, including complaints about her management style. Subsequent to this meeting, Feeney ceased lunching with Redvanly.
Six days later, Feeney and Redvanly had a brief meeting to prepare for an upcoming conference call. During this meeting, Redvanly again raised the disclosures in her audit. Feeney became angry with Redvanly.
Twelve days later, on January 28, 2003, Feeney summoned Redvanly to a meeting with National Human Resources Director Lucie Neely and informed Redvanly that she was terminated for "recent behavior." According to Redvanly, ADP did not permit her to return to her office to retrieve her personal belongings. She made numerous requests for the return of those belongings, which were eventually returned in a damaged condition.
Redvanly sued ADP and Feeney, alleging that her termination violated the anti-retaliation provision of CEPA. The complaint raised other claims including violation of public policy, breach of implied contract and conversion of her personal property.[3]
Prior to trial, defendants raised the defense that Redvanly had misrepresented her employment history. ADP argued that this evidence, acquired after the termination by ADP on different grounds, was a partial defense to Redvanly's suit. Redvanly then moved in limine to bar defendants from: (1) relying on the doctrine *446 of after-acquired evidence as a defense; and (2) making any reference to her previous employment with NYNEX. The motion papers asserted that on her ADP application, Redvanly indicated that she had worked at NYNEX and listed her reason for leaving as "position eliminated." She also stated that she had never been terminated from employment. However, it is clear that Redvanly's separation from NYNEX was not due to her position being eliminated.
Redvanly worked at NYNEX as Director of Finance from May 1987 until July 1991. There was a dispute between her and NYNEX, and she stopped working there. The dispute culminated in Redvanly filing a wrongful termination action against NYNEX in the federal court for the Southern District of New York.[4] This litigation concluded with a detailed Stipulation of Settlement and Non-Disclosure Agreement (Agreement). Therefore, the circumstances of Redvanly's separation from NYNEX remain to this day largely an area of unresolved fact.
The NYNEX Agreement provides that Redvanly received $210,000 from NYNEX in full satisfaction of all her claims. The Agreement includes the following terms:
In response to written requests for references, NYNEX shall only provide Redvanly's dates of employment and the title of her last position held. No other information will be provided. To the extent that NYNEX maintains a personnel file for Redvanly, such file shall include only [select documents], with the exception of the document entitled "[NYNEX] Exit Interview Questionnaire for the Supervisor," which document shall be permanently removed from Ms. Redvanly's personnel file.
The parties were precluded from disclosing any other terms of the Agreement.
In opposing the motion, defendants pointed out that Redvanly testified at deposition to varying accounts as to the circumstances of her separation. Defendants also alleged that the ADP Corrective Action Policy lists falsification of an employment application as grounds for immediate dismissal. Similarly, ADP employment applications indicate that misrepresentations or omissions on the application may constitute grounds for immediate dismissal. Therefore, according to defendants' argument, Redvanly would not have been hired if she had disclosed on her application the true circumstances of her separation from NYNEX. This would in turn affect the amount of her damages.
The motion judge ruled that the fact that Redvanly had previously filed a wrongful termination suit against NYNEX and that she offered differing accounts of the circumstances surrounding her cessation of employment with NYNEX were admissible. However, disclosure of the allegations of all parties in the NYNEX suit and the settlement terms was barred.
Redvanly raised the issue again immediately before the jury trial began before a different judge. The trial judge found that the NYNEX lawsuit was relevant both to the after-acquired evidence damages defense and to impeach Redvanly's credibility because it conflicted with statements she made both on her employment application and at her deposition. However, the trial judge agreed to limit the testimony on the NYNEX lawsuit allegations to avoid potential juror bias against Redvanly and because none of the allegations raised by either side had been proven.
*447 At trial, the testimony varied regarding ADP's practices with regard to application misrepresentation. Feeney testified in pretrial dispositions that any disciplinary decisions would be made in the context of the employee's employment history. Marie Hildebrant testified that falsification of an employment application would require an individualized determination and would not result in automatic termination.
The jury found, by unanimous vote, that Redvanly failed to prove by a preponderance of the evidence that she reasonably believed that any activity, practice or policy of the defendants violated state and federal law, rule or policy; nor had she objected to such activity, policy or practice. This appeal followed.
Redvanly contends that ADP was improperly allowed to utilize the after-acquired evidence defense. She argues that her nondisclosure of the NYNEX termination was not improper and thus cannot sustain an after-acquired evidence defense. She argues that because of the NYNEX settlement she could properly respond on job applications that she had not been terminated. Thus, her "no" response to the question on the ADP application asking whether she had ever been terminated from any employment was accurate.
At the outset, we note that the motion and trial judges and defendants have conflated two arguments, i.e., that: (1) Redvanly's credibility could be challenged with evidence that she gave inconsistent statements regarding the circumstances of her ceasing to work for NYNEX; and (2) after-acquired evidence that Redvanly would not have been hired by ADP, based on her job application and resume, was admissible on the issues of damages. We will discuss each issue separately.
We begin our analysis with the applicable legal authorities. The United States Supreme Court determined the scope of the after-acquired evidence defense in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). The Court held that an employee, who was wrongfully terminated but was found to have committed misconduct that would have resulted in termination or non-hire, is not barred from all remedy at law. Id. at 361-62, 115 S.Ct. at 886, 130 L.Ed.2d at 863. Such employee may not receive reinstatement or economic damages such as front pay and back pay but may still recover non-economic or punitive damages. Ibid. Thus, the Court struck a balance between the need to deter and punish discriminatory behavior on the part of an employer, while recognizing that an employee guilty of misconduct should not reap benefits to which she is not entitled because her own misconduct would have precluded her from continued employment. Ibid. An employer invoking the after-acquired evidence defense "must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Id. at 362-63, 115 S.Ct. at 886-87, 130 L.Ed.2d at 864.
We adopted this approach to the after-acquired evidence defense in Taylor v. Int'l Maytex Tank Terminal Corp., 355 N.J.Super. 482, 810 A.2d 1109 (App.Div. 2002), holding that after-acquired evidence of employee misconduct that would have resulted in termination may be used to limit economic damages from the date of the misconduct, but that such misconduct does not limit the wronged employee's right to punitive or non-economic relief stemming from the employer's discriminatory conduct. Id. at 497-98, 810 A.2d 1109. The burden to establish the facts of the after-acquired defense is on the employer. Id. at 495-96, 810 A.2d 1109.
*448 We now turn to an analysis of the evidence here. Because we conclude that the issue turns on discretionary rulings on the admissibility of evidence, the standard of review is abuse of discretion. Stoelting v. Hauck, 32 N.J. 87, 103, 159 A.2d 385 (1960).
Here, the unavoidable fact is that we do not know the crucial fact of whether Redvanly was rightfully or wrongfully terminated by NYNEX. The settlement agreement precludes an examination of the events. All we know is that Redvanly filed a wrongful termination suit, which she settled for $210,000. Such settlement can be viewed as a vindication of Redvanly. It can also be viewed as a vindication of NYNEX's position because the value of her claim could have been substantially higher. We do not know. We can only speculate.
The after-acquired evidence is relevant and admissible only on the issue of damages. Here, evidence of the "NYNEX issue" was admitted before the jury determined defendants' liability. This was improper because the impact of such evidence could have unduly prejudiced the jury against Redvanly. N.J.R.E. 403. Therefore, we hold that, due to the prejudicial nature of the NYNEX issue, and its limited purpose for admissibility, the failure to bifurcate the trial and admit this evidence only at the damages phase constitutes an abuse of discretion. For that reason, we reverse the judgment and remand for a new trial, which shall be bifurcated into a liability phase followed by a damages phase.
In the liability phase, there should be no proof, or even mention, of the after-acquired evidence defense. If there is a verdict for plaintiff on liability, the after-acquired evidence can be admitted at the damages trial only if the trial judge determines that there is prima facie case for its application. The judge should consider these two questions: (1) does Redvanly stating her job was eliminated, when it was not, warrant admission of the defense; and (2) is there sufficient testimony to support the requirement that Redvanly would definitely not have been hired, or would have been terminated, if ADP had known that she left as the result of a dispute with NYNEX that ended in settled litigation? If the judge permits the defense to come in during the damages phase, then such evidence can be used both to limit damages and to affect credibility.
Redvanly also contends that, to avail themselves of the after-acquired evidence defense, defendants were required to conclusively establish that the application falsification would have resulted in her immediate termination. Specifically, Redvanly argues that because Feeney testified in his deposition that Redvanly would not have been automatically terminated for her responses in her application, ADP would not be able to establish a valid after-acquired evidence defense at trial. We decline to address this contention in light of our holding that reversal is the adequate remedy, but we have provided guidance for the trial judge on the issue.
We reject Redvanly's blanket contention that New Jersey public policy dictates against applying the after-acquired evidence defense to allegations of resume or application fraud.
Reversed and remanded for a new trial.
NOTES
[1] N.J.S.A. 34:19-1 to -14.
[2] 15 U.S.C.A. § 7201 et seq.
[3] Redvanly voluntarily dismissed these claims at the close of her case.
[4] Redvanly v. NYNEX Corporation and Andrew Coticcio, 92 Civ. 2325 (LAP).