**Albert McCASKILL, Plaintiff,**

v.

**CONAGRA FOODS, INC., et al., Defendants.**

**No. CIV.A. 03–A–063–N.**

United States District Court, M.D. Alabama, Northern Division.

Dec. 22, 2003.

Ann C. Robertson, Temple D. Trueblood, Wiggins Childs Quinn & Pantanzis, PC, Birmingham, AL, for Albert McCaskill, plaintiff.

Peyton Lacy, Jr., Sandra B. Reiss, David Lynn Warren, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Christopher A. Mixon, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Birmingham, AL, for Signature Meats Group, ConAgra Foods, Inc., defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

## I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment (Doc. # 13) filed by the Defendants ConAgra Foods, Inc. and Signature Meats Group ("Defendant" or "ConAgra")[1] on August 15, 2003. The Plaintiff, Albert McCaskill ("Plaintiff" or "McCaskill"), filed his Complaint on January 17, 2003 (Doc # 1). The Plaintiff brings a claim under Title VII for discrimination on the basis of sex.

For the reasons to be discussed, the Defendant's Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the

---

1. The Defendants indicate that they are actually one party, that is ConAgra Foods, Inc. is also known as Signature Meats Group. (Doc. # 4). Because the Plaintiff and Defendants in their briefing treat the Defendants as one party, which is identified by name ConAgra Foods, Inc., the court will follow the parties' lead treating the Defendants for purposes of discussion as one Defendant, ConAgra.

court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. AI Transport,* 229 F.3d 1012, 1026 (11th Cir.2000)(*en banc*).

## III. *FACTS*

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:[2]

It was Valentine's Day, but Albert McCaskill, who worked for ConAgra on the second shift grounds crew, had forgotten to buy a gift for the occasion. He might not have remembered Valentine's Day at all, if not for the gift baskets that were being sold at the plant. With his memory jarred, the Plaintiff was spurred to action. He planned to buy a bottle of gin and a Valentine's Day card for a celebration at home later that evening. Because the grounds crew was short staffed that day, the Plaintiff, whose shift runs approximately from 2:00 p.m. until 10:30 p.m., was unable to take his thirty minute meal break at his regular time.

Even though second shift was nearing its end, because the store that he intended to shop at closes at either 10:30 or 11:00 p.m., McCaskill was concerned that he would be unable to make his purchases after clocking out of work. Around 10:00 or 10:30 p.m., however, near the end of his shift, relief personnel arrived, which allowed the Plaintiff to finally take his break. When he left ConAgra, the Plaintiff went to a liquor store in a nearby strip mall. When he parked his car, McCaskill saw Lamare Rudolph, the Production Manager for the second shift, who supervised the second shift grounds crew. McCaskill purchased the gin and a Valentine's Day card, placing them on the front seat of his car. Rudolph waited in his truck in the strip mall parking lot, watched the Plaintiff exit the store, and then drove off towards the plant.

With a bag containing gin and a Valentine's Day card on the front seat next to him, the Plaintiff went back to the plant for the last few minutes of his shift and to clock out. The Plaintiff, however, according to his version of events, never made it back through the gate. When McCaskill returned, he found Rudolph standing at the gate talking with the guard, Lieutenant Paulette Simmons, who performs inspections. ConAgra's employees, when entering or exiting the plant, are subject to being searched by the guards. The guards check employee identification cards and search vehicles for weapons, alcohol, and other prohibited items. This search, which includes looking under the seats and in the trunk, is performed every time a car enters or leaves the plant. In trying to understand what the Plaintiff thought was going to happen to the alcohol when he entered the gate, he raises two possibilities. The Plaintiff indicates that he might have just "left [it] at the front gate if

---

2. The facts set forth by the Plaintiff and the Defendant stand in diametric opposition on a variety of issues including what transpired on the evening of February 14, 2002, what was said at the Plaintiff's termination meeting, what Charles Mims knew about the events of February 14, 2002 when he fired the Plaintiff, and the events involving actual or potential violations of ConAgra's alcohol policy by fe- male employees, including a dispute over the types of drinks that Shirley White was selling on ConAgra's premises. The version of the facts presented by the court are those set forth by the Plaintiff, the non-moving party. The court has not found these facts to be true; the court merely presents the Plaintiff's version of events for purposes of summary judgment analysis.

[ConAgra] did not want it inside." Plaintiff's Exhibit A, at p. 130, lines 4–6. Also, McCaskill, who knows guard Simmons through her husband well enough that the two attend the same barbecues and parties, states that he thought that she would just "look the other way" with regard to his possession of alcohol. Plaintiff's Exhibit A, at p. 148, line 20. According to the Plaintiff, the guards would sometimes ignore policy violations by employees, who brought alcohol onto the premises.

Rudolph, however, directed Simmons to search the Plaintiff's car. She searched and was about to release him, when Rudolph told her to look on the front seat. Simmons walked around the car to the passenger door. She opened the door and asked the Plaintiff what was in the bag. He answered, "[m]y alcohol, my drink in my car." Plaintiff's Exhibit A at p. 127, lines 21–22. Although irritated about the situation, with the bottle closed, the seal unbroken, and the card in the bag, the Plaintiff upon Rudolph's request handed him the bag. The Plaintiff, who indicated that he had not been drinking, asked to be tested for alcohol, pursuant to ConAgra's policy of testing employees caught with alcohol at the gate. Instead of allowing the Plaintiff to be tested, Rudolph instructed him to park on the exiting side of the guard house. McCaskill followed these directions remaining in his car while Rudolph went into the booth and placed a phone call to a member of the Human Resources staff. After this conversation, Rudolph directed McCaskill to leave the facility. The Plaintiff waited a day, but he did not hear from anyone at ConAgra. So, the following day, McCaskill called to schedule a meeting.

At his termination meeting, the Plaintiff met with Larry Thomas and Charles Mims, who made the decision to terminate McCaskill. During this meeting, McCaskill told them that he never entered the gate with alcohol. Furthermore, the Plaintiff pointed out that female employees, who had been stopped with alcohol in the trunks of their cars had not been fired. He questioned why he was being treated differently than female employees. He told Mims that he believed that this differential treatment, for violations of the same policy, was unfair. ConAgra, nevertheless, fired McCaskill. The stated reason for his termination was violating the company's drug and alcohol policy. The remarks in his termination form state that McCaskill was fired because "on February 14, 2002, [he] brought liquor onto Company property which is strongly prohibited and results in his termination." Plaintiff's Exhibit F.

## IV. *DISCUSSION*

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, the Plaintiff seeks to prove intentional discrimination on the basis of sex by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff establishes a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer does so, then the plaintiff has the opportunity to come forward with

evidence, including the previously produced evidence, to establish a prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *Combs,* 106 F.3d at 1534. The Defendant raises six arguments for why summary judgment is warranted: lack of comparators, termination based upon a legitimate non-discriminatory reason, lack of a conspiracy, other similarly situated males were not fired, lack of credibility of Plaintiff's witnesses, and the Plaintiff is absolutely barred from recovering any damages.

■ The Defendant contends that the Plaintiff cannot present a comparator, a similarly-situated female employee, who was treated more favorably than he was, thus summary judgment is warranted. As part of the prima facie case, the Plaintiff must show that his employer treated more favorably similarly-situated employees outside his classification, in this case women. *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073 (11th Cir. 1995). If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is appropriate where no other evidence of discrimination is present. *Id.* The nature of the offenses committed and the nature of the punishments imposed are the most important factors in determining if employees are similarly situated in the disciplinary context. *Silvera*

*v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001). "[F]or purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* When considering the nature of the offense, "the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* "Exact correlation [, however,] is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Id.* (quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989)). McCaskill argues that he can present four similarly situated female comparators: Rosie Arrington, Deborah McCall, Shirley White, and Vanessa Posey.

■ The Defendant contends that Rosie Arrington is not similarly situated because she was caught at the security gate with a beer in plain sight and because her violation of ConAgra's policy was not intentional. ConAgra, apparently, has a different policy for addressing situations where alcohol is found in plain sight at the gate, as opposed to on the Defendant's premises. If an employee is caught with alcohol in plain sight at the gate, ConAgra confiscates the alcohol and tests the employee for alcohol. If the test is negative, the employee is allowed to report to work. This court cannot distinguish Arrington as a comparator on the basis of the fact that the beer she was transporting was found in plain sight or because she was caught at the gate, rather than on the premises. Viewing the facts in the light most favorable to the non-movant, McCaskill was stopped at the gate with the alcohol that he purchased in plain sight. Arrington brought warm beer in a cooler placed in

the trunk of the car. The Plaintiff, under the facts as he presents them, never entered the gate and was arguably even more transparent in his possession of alcohol, placing it in a paper bag on the front seat of his car. Thus, the Defendant's attempt to distinguish Arrington as a comparator on the basis of the alcohol being in plain sight and being caught at the gate is unpersuasive.

The distinction, however, remains that McCaskill intentionally brought alcohol onto ConAgra's premises while Arrington accidentally did so. The Defendant's explanation of the termination occurring because of McCaskill's intentional violation, at least for purposes of summary judgment analysis, is undermined by the allegations involving Shirley White. According to the testimony of the Plaintiff and Arrington, White sold champagne in gift baskets on ConAgra's premises. If White was selling champagne on the premises, which is in dispute, then it is reasonable to conclude that she brought alcohol intentionally onto the premises. As previously indicated, the two critical elements in determining if someone is an appropriate comparator in the context of a disciplinary action are the similarity of the nature of the offense and a disparity of punishment. *See Silvera,* 244 F.3d at 1259. Both parties allegedly intentionally violated ConAgra's alcohol policy, thus the first element, the similarity of the offense, is met. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). That McCaskill was terminated, while White was apparently not disciplined in any manner, addresses the second component, the disparity of the punishment. *Id.*

The Defendant argues that White, nevertheless, cannot serve as a comparator because Mims, the decision maker, lacked knowledge that she was selling alcohol on the premises.[3] The defendant is correct that "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera,* 244 F.3d at 1262. Mims did state that he was unaware that White was selling alcohol. The Plaintiff, however, indicates that White was selling these baskets, which for purposes of summary judgment the court accepts the Plaintiff's evidence that they contained alcohol, out of her car with the doors open by the entrance/exit where the employees go into and out of the building and that she posted fliers advertising champagne for sale. According to McCaskill, members of management such as Mims park near a little walkway that passes by White's vehicle, where she openly sells these baskets. The facts as argued by McCaskill make it possible that a reasonable jury could conclude that Mims, despite his statement to the contrary, did actually know that White was selling alcohol on the premises.

■ The Defendant argues that "[e]ven if [the] Plaintiff could state a *prima facie* case of sex discrimination regarding his termination, his claim still must fail because he cannot dispute ConAgra's legitimate, nondiscriminatory reasons for his discharge, namely that he knowingly violated ConAgra's drug and alcohol policy." Defendant's Brief at 26. The Plaintiff does not dispute that violating a drug and alcohol policy provides a legitimate nondiscriminatory reason for discharge, rather McCaskill argues that this policy was ap-

**3.** The Defendant also argues that Mims was unaware that McCaskill claimed to have not entered the premises with alcohol. The

Plaintiff states that he told Mims prior to his termination that he did not enter the premises. Plaintiff's Response at 7.

plied in a discriminatory manner. The Plaintiff in his prima facie case makes a showing that ConAgra's drug and alcohol policy is applied to terminate male employees, but not similarly situated female employees. Thus, what could be a legitimate non-discriminatory reason does not appear, under the facts as alleged by the Plaintiff, to be truly non-discriminatory.

■ The Defendant argues that to avoid summary judgment the Plaintiff must show that a conspiracy existed between Simmons, Rudolph, and Mims because Mims relied on their reports, which stated that the Plaintiff was found on the premises with alcohol, in making his decision to terminate McCaskill. If not engaged in a conspiracy, then Mims, according to the Defendant, was acting in good faith reliance upon the reports of Simmons and Rudolph, whom the Defendant contends have not been shown to have a discriminatory intent. It is unnecessary for the Plaintiff to show a conspiracy or for the court to consider this issue. As previously indicated, what Mims allegedly knew or did not know when making the decision to terminate McCaskill is contested. The Plaintiff claims that Mims knew about White's selling of gift baskets containing alcohol and that McCaskill never entered the gate. The issue raised by the Defendant might warrant further consideration if Mims's explanation for the termination were that he believed the reports that were received from Simmons and Rudolph and disbelieved the Plaintiff's version of events. The Defendant, however, contends that Mims was unaware of the Plaintiff's contention that he never entered ConAgra's premises with alcohol. This means that either Mims or the Plaintiff is mistaken, forgetful, or lying about what was said at the termination meeting re-

garding whether McCaskill actually entered the gate and was on the premises with alcohol. Thus, the central issue in question has shifted from what was contained in Simmons' and Rudolph's reports to what did Mims actually know through his own observations and conversation with the Plaintiff. Regardless, the Plaintiff being found on the premises with alcohol still would not explain the alleged disparity in the defendant's treatment of White and McCaskill.

■ The Defendant also seeks summary judgment because it indicates that five similarly-situated males were not terminated, thereby showing the Defendant does not discriminate against men. The Supreme Court stated that it is "clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Connecticut v. Teal*, 457 U.S. 440, 455, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). A defendant has argued to the Eleventh Circuit that a discrimination suit could not move forward where an African–American employee, who was terminated, was replaced by another African–American employee. The court, applying *Teal*, disagreed. *Howard v. Roadway Exp., Inc.*, 726 F.2d 1529, 1535–36 (11th Cir.1984). The court found that when the plaintiff presented evidence that white employees were not terminated for similar behavior, the plaintiff's replacement also being African–American did not preclude a suit for discrimination. McCaskill, at least for purposes of summary judgment analysis, has demonstrated that a similarly-situated woman was not fired for engaging in allegedly identical, or arguably worse behavior than the Plaintiff. The Plaintiff also as-

serts that these instances of non-termination of similarly situated males occurred after the filing of McCaskill's EEOC claim, raising in the Plaintiff's view some degree of skepticism about the Defendant's motivation. Regardless, favorable treatment of other men does not excuse discrimination against even one individual on the basis of sex.

■ The Defendant asks this court to consider the credibility of Arrington and McCaskill, arguing that they lack credibility because of faulty memories and bias. Also, because the Plaintiff and Arrington did not actually taste the beverage that was being sold by White, the Defendant advises the court that it should disregard their testimony that White was selling alcohol. The court declines to accept either invitation. "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996). Furthermore, knowledge that someone is selling alcohol is not derived exclusively from a sense of taste. Arrington asserts that she saw the label that indicated it was champagne, and McCaskill states that he saw champagne in these baskets. The failure of either to actually taste the beverage does not preclude them from testifying.

■ When deciding a defendant's motion for summary judgment in a discrimination case, "the court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001) (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir.1994)). The court concludes that the Plaintiff has created such doubt as to the Defendant's proffered reason.

The Defendant, nevertheless, seeks summary judgment upon the ground that the Plaintiff is not entitled to any damages even if he successfully shows that ConAgra's actions were discriminatory. According to the Defendant, the Plaintiff lied in his application about his prior conviction for robbery, lied about being fired from a previous job, lied about the length of his previous employment, and lied about his most recent employers. Mims states that if these falsehoods had been known, McCaskill would have been fired. According to the Defendant, the combination of this after-acquired information with the Plaintiff's failure to mitigate his damages and to seek psychological counseling creates an absolute bar on recovery. With regard to his alleged failure to mitigate and failure to seek psychological counseling, McCaskill asserts that he did seek and eventually did find alternative employment and that he lacks the sufficient expert training necessary to be expected to appreciate the psychological injury that he claims to have suffered as a result of the Defendant's actions. The reasonableness of the Plaintiff's actions in attempting to mitigate his damages by seeking alternative employment, but failing to seek psychological counseling, cannot appropriately be resolved by this court on a summary judgment motion.

■ "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the em-

ployee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Mims, the decision maker responsible for firing the Plaintiff, stated that he would fire McCaskill if he knew about the falsehoods in his application. The Plaintiff does not dispute that he would have been fired and concedes that his potential remedies are limited by after-acquired information. Plaintiff's Response at 37–38.

 "As a general rule in cases of this type,[4] neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *McKennon*, 513 U.S. at 361–62, 115 S.Ct. 879. In the Eleventh Circuit, injunctive relief is also unavailable as a remedy. *Wallace*, 62 F.3d at 380 (finding that "[i]njunctive relief also will not be appropriate, as Neal will no longer be employed at Dunn."); *see also Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982). For the same reasons, loss of seniority would also be inapplicable because the Plaintiff will not be reinstated at Con-Agra. Backpay, however, affords an ap-

propriate remedy. *McKennon*, 513 U.S. at 362, 115 S.Ct. 879. The Supreme Court held that courts should formulate the appropriate calculation for backpay measuring from the date of unlawful discharge until the date that the after-acquired information was discovered. *Id.*[5] In addition to backpay, the Plaintiff also seeks a declaratory judgment, compensatory, punitive, and/or nominal damages, benefits and/or loss of payment for pension/retirement benefits, and an award of costs, attorneys' fees, and expenses. Applying the reasoning of *Wallace* to these claims, two additional limitations emerge. First, the Plaintiff cannot recover for benefits and/or loss of pension/retirement benefits that arose subsequent to the discovery of the after-acquired information. Second, the Plaintiff seeks a declaratory judgment "holding that the actions of the defendants ... violated and continue to violate the rights of [the] [P]laintiff as secured by Title VII." Complaint at 4. The court could potentially declare that the Defendant's actions violated the Plaintiff's rights under Title VII, but, due to the after-acquired evidence, the court could not declare that the Defendant continues to violate these rights. Consequently, although the remedies available to the Plaintiff are limited, summary judgment is not warranted on the Plaintiff's claim; his recovery is not completely barred. *McKennon*, 513 U.S. at 361–63, 115 S.Ct. 879; *Wallace*, 62 F.3d at 380–81.

---

4. The Eleventh Circuit defines "this type" of case to include cases like this one, brought pursuant to Title VII, where the after-acquired information relates to inaccuracies or lies appearing on a job application, rather than job performance. *Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 378 (11th Cir. 1995).

5. "In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party." *Id.* at 362. Neither the Plain-

tiff nor Defendant argues to this court that extraordinary equitable circumstances exist that would warrant deviating from the general rule. The Eleventh Circuit reversed a district court that failed to grant partial summary judgment where a party established that an employee would have been fired because of after-acquired information relating to lies on a job application on the issues of front pay, reinstatement, and injunctive relief, even though extraordinary equitable circumstances were potentially implicated in the case. *Wallace*, 62 F.3d at 380–81.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. The Defendants are due partial Summary Judgment as to the remedies of reinstatement, front pay, injunctive relief, loss of seniority, benefits and/or loss of payment for pension/retirement benefits to the extent that they arose subsequent to the discovery of the after-acquired information, and declaratory judgment insofar as the declaration applies to a continuing violation extending beyond the discovery of the after acquired information. These remedies are unavailable to the Plaintiff. The Defendants' Motion for Summary Judgment is due to be DENIED otherwise as to the Plaintiff's claim for discrimination under Title VII on the basis of sex.

## VI. ORDER

For the reasons stated above, it is hereby ORDERED as follows:

1) The Defendants' Motion for Summary Judgment is DENIED as to the Plaintiff's Title VII claim.

2) The Defendants' Motion for Summary Judgment is GRANTED as to the remedies of reinstatement, front pay, injunctive relief, loss of seniority, benefits and/or payment for loss of pension/retirement benefits to the extent that they arose subsequent to the discovery of the after-acquired information, and declaratory judgment insofar as the declaration applies to a continuing violation extending beyond the discovery of the after-acquired information.

3).The case will proceed against the Defendants ConAgra Foods, Inc. and Signature Meats Group on the Title VII claim

for a declaratory judgment insofar as it relates to the Defendants' conduct before the discovery of the after acquired-information, compensatory, punitive, and/or nominal damages, benefits and/or payment for loss of pension/retirement benefits arising before the discovery of after-acquired information, and an award of costs, attorneys' fees, and expenses.