■ MARILYN ENGSTROM, Respondent, v KINNEY SYSTEM, INC., et al., Appellants. [661 NYS2d 610] —Order, Supreme Court, New York County (Lewis Friedman, J.), entered March 13, 1996, which, to the extent appealed from, denied defendants' motion for summary judgment, unanimously reversed, on the law, without costs, defendants' motion for summary judgment granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint.

Starting in 1976, plaintiff Engstrom worked as the sole cashier at defendant Kinney's garage at 150 West 38th Street. Since at least 1990, her shift began at 11:00 A.M. and ended at 7:00 P.M. In August 1993, Kinney introduced a new cashier's uniform, identical to that of the parking attendants, consisting of a white shirt, black pants and a black bow tie. The uniform was intended to convey a professional and recognizable image to the public.

On September 15, 1993, Kinney's vice-president of operations, Michael Beck (Beck), noticed that plaintiff was not wearing her bow tie. He instructed her that, pursuant to the company's policy, she was required to wear it. Plaintiff responded that wearing a bow tie would violate her religious beliefs as a Jehovah's Witness, and she would not wear it. Beck sent plaintiff home for violating the dress-code policy. Later that day, Beck consulted with Kinney's director of operations, and its president, and it was decided that plaintiff would be accommodated and allowed to wear a substitute for the bow

tie, such as a scarf, ribbon or sash.* Meanwhile, plaintiff complained to her union representative about the bow tie requirement. Both the plaintiff and the union representative were informed of the accommodation. Nonetheless, plaintiff returned to work on September 27, 1993 wearing the bow tie. She raised no further objection and did not avail herself of the accommodation.

In January 1994, the work schedule of six of the nine garage employees was altered because, according to Kinney, an audit revealed that the garage was much busier in the evenings than during the daytime. Plaintiff's hours were changed to 12:30 P.M. to 8:30 P.M., effective January 24, 1994. Plaintiff did not report to work on January 24th or January 25th, informing her supervisor by phone that she could not work under the new schedule, and that she was ill and had gone to a doctor. On January 26th, plaintiff again failed to report to work, and Beck wrote to her union representative, stating that Kinney considered plaintiff to have abandoned her position. A Step I grievance hearing was scheduled for February 2, 1994, and rescheduled for February 9th. Plaintiff failed to appear on either date and admitted knowledge of at least the latter date.

On February 9, 1994, plaintiff's attorney wrote to Kinney's vice-president, accusing Beck of religious discrimination by suspending plaintiff for following her religious conviction, and by changing her work schedule in retaliation for her complaint. Plaintiff's attorney further alleged that the shift change was one Beck "knew would place tremendous burdens on [her] because of her commute to her home in Rockland County." By letter dated March 10, 1994, Kinney's attorney extended an offer for plaintiff to return to work, still requiring the plaintiff to work the later hours. However, the letter requested information regarding the nature and time of certain religious meetings allegedly attended by the plaintiff two evenings a week "to continue a discussion of a reasonable accommodation." Plaintiff rejected the offer.

Plaintiff commenced this action against Kinney and Beck by summons and complaint dated April 8, 1994. The complaint included five causes of action alleging discrimination and retaliation in violation of Executive Law § 290 et seq.; violation of plaintiff's constitutional free speech rights; violations of the Labor Law by failing to pay plaintiff her last week's wages and by deducting one dollar per hour from her salary; and inten-

---

* Plaintiff claims that this accommodation was reached between her and Beck *prior* to Beck's sending her home for violating the dress-code policy. She also claims that she was subsequently fired by Beck.

tional infliction of emotional distress. Defendants answered, and in June 1995, moved for summary judgment dismissing plaintiff's complaint. Plaintiff cross-moved for partial summary judgment on her wage deduction and emotional distress causes of action. The IAS Court denied both motions, finding "numerous disputes of fact between the parties." The IAS Court did not specifically address the merits of each separate cause of action.

It is an unlawful discriminatory practice for an employer to discriminate against an employee "in compensation or in terms, conditions or privileges of employment" based on the employee's religion (Executive Law § 296 [1] [a]). An employer may not discriminate against its employee "because of his observance of any particular day or days or any portion thereof as a [S]abbath or other holy day in accordance with the requirements of his religion" (Executive Law § 296 [10] [a]). Also, an employer may not retaliate against any employee "because he has opposed any practices forbidden under this article or because he has filed a complaint * * * under this article" (Education Law § 296 [1] [e]).

Plaintiff's discrimination claims should have been dismissed. Insofar as her complaint alleged defendants' failure to accommodate her religious objections to wearing a bow tie, the law is clear that while an employer must accommodate an employee's observance of the Sabbath, there is no duty to accommodate general religious practices (see, Eastern Greyhound Lines Div. v New York State Div. of Human Rights, 27 NY2d 279, 283-284 [uniformly applied company policy requiring that all employees be clean-shaven was not an unlawful discriminatory practice as applied to Muslim whose religion required him to wear a beard]). Thus, absent a discriminatory motive, Kinney did not violate the law by requiring plaintiff to wear a bow tie (supra).

While plaintiff does not allege that the bow tie requirement was based on any discriminatory motive, she does allege that she was the subject of religious discrimination by being singled out for enforcement of the dress-code policy. However, plaintiff's accusations are vague, conclusory and bereft of supporting evidence (see, Hall v Paladino, 210 AD2d 595, appeal dismissed 85 NY2d 923 [defendant's summary judgment motion properly granted in discrimination case where plaintiff's proof consisted of conclusory allegations and inadmissible hearsay most of which was refuted by defendant's first-hand testimony]). For example, while she alleges selective enforcement of the bow tie policy, she produced no evidence that any non-Jehovah's Witness employees were permitted to violate the policy (supra).

She reports no specific occurrences of non-enforcement. In contrast, defendants submitted company records demonstrating that other employees were in fact disciplined for violating the dress code.

Similarly, plaintiff's assertion that defendants retaliated against her by harassing her and creating a hostile work environment is not substantiated by the record. She claims that Beck once told her to tighten her tie, and that "I don't care if it chokes you." However, plaintiff claims this occurred only once, and she was not disciplined as a result. An isolated incident such as this, even if it occurred, would not support a finding of harassment or a hostile work environment (*see, Meritor Sav. Bank v Vinson*, 477 US 57, 67; *Snell v Suffolk County*, 782 F2d 1094 [2d Cir 1986]). She further claims that after her complaint, Beck had other employees spy on her. However, plaintiff did not submit any competent evidence on this point. Rather, she merely states that her supervisors paid increased attention to her after her refusal to wear the bow tie, and offered her subjective belief for that increased attention. Plaintiff's additional claim that she was improperly sent home from work without pay for being late on two occasions is conclusively refuted by defendants' payroll records demonstrating that plaintiff was paid for all the time except the hour or two she was late.

Plaintiff also asserts that her shift change was instituted by defendants with the express purpose of interfering with her religious activities. The evidence is totally to the contrary. Defendants submitted unrefuted evidence that they changed the work shifts of several of the employees at the garage due to changing business conditions, requiring them to come in 30 minutes or one hour later. Plaintiff offers not one iota of evidence that defendants instituted this change to harm her. She merely claims that Beck and her immediate supervisor were aware of her evening religious meetings. "A prima facie case of retaliation requires evidence of a subjective retaliatory motive" for the adverse employment action (*Pace Univ. v New York City Commn. on Human Rights*, 85 NY2d 125, 128). Given that the changes in work schedule were applied uniformly to defendants' employees, plaintiff has failed to make a prima facie showing of retaliatory motive.

Even if we were to conclude that a prima facie case of discrimination had been shown, we would dismiss that cause of action due to plaintiff's failure to cooperate with defendants' attempts at accommodation. "An employee's failure to inform his employer of his religious needs and to assist in the accom-

modation process may be fatal to the right of the employee to have his beliefs accommodated" (*State Div. of Human Rights v Rochester Prods. Div.*, 112 AD2d 785, 786). Here, plaintiff's attorney initially objected to the shift changes on the ground of commuting inconveniences, not religious reasons, and plaintiff ultimately rejected defendants' offer to seek an accommodation regarding her schedule. Plaintiff's refusal to cooperate constituted a waiver.

Plaintiff's remaining causes of action are equally flawed. The second cause of action, alleging a violation of plaintiff's free speech rights, fails as a matter of law since Kinney and Beck are private entities (*see, SHAD Alliance v Smith Haven Mall*, 66 NY2d 496, 502 [State and Federal constitutional guarantees of freedom of speech protect the individual against action by governmental authorities, not private persons]). Plaintiff's third cause of action seeking her last week's paycheck is moot since she has since received said payment. The fourth cause of action, alleging a violation of Labor Law § 193 due to an improper deduction from her wages, is not viable because no deductions were made from wages already earned by plaintiff (Labor Law § 190 [1] [" '(w)ages' means the earnings of an employee for labor or services rendered"]). The prospective one dollar deduction of all employees' wages resulted from the failure to reach a new union wage agreement, and does not fall within the statute. Finally, since plaintiff has failed to allege conduct that is so outrageous and extreme so as to be "beyond all possible bounds of decency" to support her fifth cause of action for intentional infliction of emotional distress (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303), that cause of action is also dismissed. Concur—Murphy, P. J., Wallach, Tom and Mazzarelli, JJ.