**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**HIGH SPEED ENTERPRISE, INC., and Arizona Corporation, doing business as Subway, Defendant.**

**No. CV–08–01789–PHX–ROS.**

United States District Court, D. Arizona.

June 27, 2011.

Mary Joleen O'Neill, Nancy Eileen Griffiths, Richard Iven Sexton, Sally Clifford Shanley, Equal Employment Opportunity Commission, Phoenix, AZ, for Plaintiff.

Patricia Kirtley Wells, Sandra J. Padegimas, Kirtley Wells Law Office, Phoenix, AZ, for Defendant.

## ORDER

ROSLYN O. SILVER, Chief Judge.

Before the Court are the parties' cross-motions for partial summary judgment. For the reasons below, Plaintiff's motion will be granted, and Defendant's motion will be denied.

## BACKGROUND

### A. Factual Background

The following facts are undisputed unless otherwise noted. Defendant, High Speed Enterprise, Inc. ("Defendant"), was incorporated in 2000 and operates Subway franchises. (Doc. 111, at ¶ 2). Kevin Mayer ("Mayer") is the owner and President of Defendant, and held those positions in 2006. (*Id.*, at ¶ 3). Rebecca Vick ("Vick") is President of Operations for Defendant, and held those positions in 2006. (*Id.*, at ¶ 5). As President of Operations, Vick supervises the General Managers for each Subway store operated by Defendant. (*Id.*, at ¶ 7).

In April 2006, Mayer hired Haron Khairzad ("Khairzad") as General Manager at Defendant's Subway store on 16th Street and Thomas (the "Store"). (*Id.*, at ¶ 8). In May 2006, Defendant displayed an A-frame sign soliciting applicants whom the restaurant could hire when vacancies occurred. (*Id.*, at 6, at ¶ 13). At least two new employees were hired in May 2006. (*Id.*). In addition, Defendant hired another person, Priscilla Perry, for the Sandwich Artist position between May 29, 2006 and July 10, 2006. (Doc. 129, at 23, at ¶ 24). During this time frame, however, Defendant was not hiring full-time Sandwich Artists. (*Id.*).

On May 9, 2011, Murillo applied for a job at the Store. (Doc 129, at 18, at ¶ 14). Murillo was pregnant when she applied. (*Id.*). Murillo returned to the Store later that month to follow up on her application. (Doc. 111, at ¶ 20; Doc. 111, at Ex. 1 at 47–48). Murillo testified a middle eastern manager a little taller than her spoke to her. (Doc. 111, at ¶ 20; Doc. 111, at Ex. 1 at 47–48). Murillo testified the manager told her the Store could not hire her because she was pregnant. (Doc. 129, at ¶ 19). Murillo's boyfriend, Iskander Vargus ("Vargus"), was with Murillo, and heard the manager tell Murillo the Store would not hire her due to her pregnancy. (*Id.*, at Ex. 8, at 15:3–13).

Khairzad testified a young, Hispanic, pregnant woman turned in an application for employment in May 2006, and Khairzad put the application in a folder in the office for Vick to review. (Doc. 129, at 3, at ¶ 6; Doc. 111, at Ex. 3, at 133–37).[1] When the applicant returned to the store to check on her application, Khairzad told

the applicant, "You're pregnant. We can't hire you." (*Id.*, at 140).

Defendant has not offered an explanation as to why Murillo's application was denied. Instead, Defendant argues Khairzad's testimony is not about Murillo, but another young, Hispanic, pregnant job applicant against whom Khairzad discriminated against in May 2006. In fact, Defendant disputes "whether Murillo ever spoke to Khairzad regarding a job at Subway." (Doc. 129, at 19, at ¶ 16). Defendant relies on the following to support its argument that Murillo never spoke with Khairzad.

**Specific words used**

Khairzad testified he told a pregnant applicant "you're pregnant, we can't hire you," and Murillo testified she was told "pregnant women could not be allowed to work [for Defendant] due to their insurance policy." (Doc. 129, at ¶ 19). Vargus testified the manager told Murillo the Store could not hire her because she was pregnant, but Vargus did not hear the manager mention insurance. (Doc. 129, at 10–11, at ¶¶ 31–32).

**Whether the interaction was an "interview"**

Defendant disputes whether Murillo was ever "interviewed," and asserts Khairzad never questioned applicants during an "interview." (Doc. 129, at 3, at ¶ 3).

**Time frame in which applicant returned to check on application**

Khairzad testified the pregnant woman who filled out the application returned two or three days later to check on the application. (Doc. 111, at Ex. 3, at 136). By contrast, Murillo testified she returned nearly three weeks later to check on her

---

[1]. Khairzad testified Vick asked Khairzad what the applicant looked like, and Khairzad informed Vick she was young and pregnant. (Doc. 111, at Ex. 3, at 137). Khairzad testified Vick informed her Defendant was not hiring pregnant people because they cannot lift things, they are nursing, and it was going to be a problem. (*Id.*).

application. (Doc. 111, at ¶ 20; Doc. 111, at Ex. 1 at 47–48).

### Sitting versus standing

Murillo testified she and the manager were sitting at a table in the Store when the manager told her the Store could not hire her. (Doc. 129, at 8–9, ¶¶ 24–25). Defendant states in its brief that Khairzad spoke to the applicant from behind the counter, not sitting at a table. (Doc. 128, at 4). However, the record cites support the proposition that Khairzad was behind the counter during the applicant's *first* visit to obtain an application, not her return visit in which Khairzad told the applicant the Store could not hire her because of her pregnancy. (Doc. 128, at 4 (citing Doc. 129, at ¶¶ 6 and 24)).

### Height

Defendant asserts Murillo is 5'2" and Khairzad testified the applicant was about his height, which is 5'9". A review of Khairzad's testimony does not support this assertion. Khairzad testified he was unsure how tall the woman was, but gave an estimate between 5' and 5'9". Murillo testified she is 5'2". (Doc. 129, at 22, ¶ 22).

### Where Vargus stood

Murillo testified Vargas stood on the other end of the Store during the conversation with the store manager, but Vargus testified he stood next to Murillo. (Doc. 129, at 10–11, at ¶¶ 31–32).

### Vargus' and Khairzad's estimates about Murillo's appearance

Vargus testified Murillo was "not very big," in response to a question about Murillo's physical appearance due to her pregnancy. (Doc. 129, at 19, at ¶ 16). Khairzad testified the woman he spoke with was "pretty big," and estimated she was about 8 months pregnant. (*Id.*).

Based on these alleged discrepancies in the evidence, Defendant asserts Murillo was not the job applicant who Khairzad rejected on the basis of her pregnancy and, as such, there is a genuine issue of material fact on the issue of credibility.

Also on May 29, 2006, the same day as Murillo's alleged interview with Defendant, Murillo applied for a position at Wal–Mart. (Doc. 129, at ¶ 20). Five weeks later, on July 10, 2006, Murillo began working for Wal–Mart on East Thomas Road earning $7.70 per hour. (*Id.*, at ¶ 21). Murillo stopped working at Wal–Mart on August 9, 2006. (*Id.*, at ¶ 22). The parties dispute whether she abandoned her job, or stopped working for reasons related to her pregnancy. (*Id.*). Murillo gave birth to a baby boy on October 28, 2006. (*Id.*, at ¶ 25). On February 16, 2007, Murillo began working at Wal–Mart on West Bethany Road. (*Id.*). On April 22, 2007, Wal–Mart terminated Murillo because she facilitated the theft of nearly $900 in merchandise. (*Id.*, at ¶ 28). Plaintiff objects to evidence of the termination and theft because Plaintiff's back pay calculations stopped accruing prior to this incident. (*E.g.*, Doc. 127, at ¶ 28).

## B. Procedural History

On June 5, 2006, Murillo filed a charge of discrimination with the Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), alleging she was discriminated against because of her pregnancy. On August 30, 2007, the EEOC issued a Letter of Determination stating there was reasonable cause to believe Defendant had violated Title VII. (Doc. 129, at ¶ 28).

On September 20, 2008, Plaintiff filed a Complaint alleging Defendant failed to hire Murillo because of her sex and pregnancy in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. Plaintiff and Defendant filed cross-motions for partial summary judgment. (Docs. 110, 112). The

Court granted Defendant's motion in part, and stayed the case for 60 days so the parties could engage in conciliation. (Doc. 139). In light of the order to conciliate, the remaining portions of Defendant's motion for summary judgment, and all of Plaintiff's motion for summary judgment, were denied without prejudice. (*Id.*). Subsequently, the parties filed a joint status report indicating the parties' conciliation efforts did not result in settlement and requesting the Court decide the remaining issues in the cross-motions for partial summary judgment. (Doc. 146).

Plaintiff seeks a partial summary judgment that Defendant is liable for pregnancy discrimination in violation of Title VII, and that three of Defendant's affirmative defenses fail: (1) failure to conciliate in good faith; (2) after-acquired evidence; and (3) failure to mitigate damages. Plaintiff argues the only issue that should be set for trial is damages. Defendant moves for partial summary judgment on two of its affirmative defenses: (1) Plaintiff failed to satisfy its statutory obligation to conciliate in good faith prior to initiating suit; and (2) Plaintiff's claim for back pay damages is barred by the after-acquired evidence doctrine.

## ANALYSIS

### A. Summary Judgment Standard

When parties submit cross-motions for summary judgment, each motion must be considered on its own merits and analyzed under Federal Rule of Civil Procedure 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). To enter summary judgment, the Court must examine all evidence and find no dispute con-

cerning genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (citing *Celotex Corp.*, 477 U.S. at 323–25, 106 S.Ct. 2548). The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact. *Id.*

### B. Summary Judgment Motions

#### 1. Liability

 Plaintiff moves for summary judgment on liability. Title VII prohibits an employer from discriminating against an employee "because of sex," including on the basis of pregnancy. 42 U.S.C. § 2000e(k). A plaintiff may show a Title VII violation by demonstrating pregnancy or a pregnancy-related condition was "a motivating factor" in an adverse employment decision. 42 U.S.C. § 2000e–2(m). A plaintiff may establish her case through direct or circumstantial evidence. *Jauregui v. City of Glendale*, 852 F.2d 1128,

1134 (9th Cir.1988). Direct evidence is "evidence, which if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods.*, 176 F.3d 921, 926 (6th Cir.1999); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir.2002).

■ Plaintiff has provided direct evidence of discrimination. It is undisputed Murillo applied during May 2006, and Khairzad was the General Manager of the Store during that month. Murillo and Vargus testified when Murillo returned to the Store to check on her application, a middle eastern manager told her the Store could not hire her because she was pregnant. Defendant does not assert the Store had any other managers during that time. Defendants do not dispute that Khairzad is middle eastern. Khairzad testified he told a young, Hispanic, pregnant applicant between 5′ and 5′9″ he could not hire her because she was pregnant. Defendants do not identify any other applicant in May 2006 who was young, Hispanic, pregnant and between 5′ and 5′9″. Defendant offers no alternative explanation as to why Murillo was not hired.

■ Defendant does not squarely address the allegations against it. Instead, Defendant attempts to create a genuine issue of material fact by pointing to differences in details about: whether the word "insurance" was used; whether there was an official "interview"; when Murillo returned to the Store to check on her appli-cation; whether Murillo and the manager were sitting or standing during their conversation; where Vargus was standing during the conversation; how tall Murillo is; and how pregnant Murillo appeared to two male witnesses.

First, Defendant's distinctions regarding whether Murillo and the manager were sitting or standing and about Murillo's height are unsupported by the record.[2]

Second, Defendant's minor differences in the details of the testimony do not create a genuine issue of material fact. *See Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1169–70 (9th Cir.1996) ("Illuminating a potential minor inconsistency in [a party's] version of events is insufficient to raise a genuine issue of material fact . . . .") *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997); *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir. 1978) ("[W]hile summary judgment is improper where sufficient evidence supporting a claimed factual dispute is adduced, so as to require a jury or judge to resolve the parties' differing versions of the truth at trial, this evidence must be 'significantly probative' of the disputed fact."). Whether the word "insurance" was used, and whether there was an official "interview" or just a conversation, does not create a genuine issue of material fact as to whether Murillo was denied employment because of her pregnancy. Likewise, the fact that Murillo testified she returned three weeks after her initial application and Khairzad

---

**2.** The record cites do not support Defendant's claim that the Khairzad was standing behind the counter, rather than sitting in a booth, when he told an applicant the Store could not hire her because she was pregnant. Instead, the record cites show Khairzad was behind the counter when he handed out the application on the applicant's *first* visit. The applicant returned later to check on the status of her application. Similarly, Defendant's claim that there is a disparity in testimony regarding the applicant's height is unsupported by the record. The testimony shows Khairzad estimated the applicant was between 5′ and 5′9″, and Murillo is 5′2″, so there is no dispute she is within the height range to which Khairzad testified.

testified the applicant returned three days after her initial application does not create a genuine issue of material fact. Nor do the details about where Vargus stood, or the descriptions of Murillo's size. Defendant attempts to side-step the testimony of Khairzad, Murillo and Vargus by aggregating minor differences in the witnesses' testimony and claiming the events never occurred. Even in the aggregate, Defendant's minor differences in the details do not create a *genuine* issue of *material* fact.

In addition, Defendant's argument that "[t]he trier of fact could easily conclude Murillo has serious credibility issues and disregard her testimony" does not defeat summary judgment. (Doc. 128, at 5). Assuming Murillo's subsequent acts of dishonesty are admissible[3] under Rules 404(b), 608 and 609, Plaintiff is still entitled to summary judgment on liability. Even if the Court ignores Murillo's testimony, it is left with no genuine issue of material fact based on Vargus' and Khairzad's testimony. Defendant has offered no competing explanation for what happened to Murillo's application. As discussed above, the minor discrepancies in the three witnesses' testimony do not create genuine issues of material fact. In the face of three witnesses testifying about the discrimination, a credibility issue regarding one witness without competing evidence as to the other witnesses' testimony does not defeat summary judgment. Defendant must present specific facts to establish a

genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. It has not done so.

Plaintiff's motion for summary judgment will be granted as to liability.

**2. After–Acquired Evidence**

■ The parties filed cross-motions for summary judgment on Defendant's after-acquired evidence affirmative defense. Plaintiff argues Defendant failed to meet its burden of demonstrating it would not have hired Murillo based on after-acquired evidence, and the issue is moot. Defendant argues it is entitled to summary judgment on this affirmative defense because Murillo falsified her job application by failing to disclose her prior employment with Burger King.

■ The doctrine of after-acquired evidence has limited applicability. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).[4] If an employer terminates an employee for a discriminatory reason and later discovers evidence upon which the employer could have terminated the employee for a nondiscriminatory reason, such evidence limits the remedies available to a plaintiff. If the employer establishes the employee's "wrongdoing was of such severity that the employee in fact would have been terminated on these grounds alone, if the employer had known at the time of the discharge," then rein-

---

3. It is not clear this evidence is admissible at this point because the burden to establish admissibility of evidence is high. In addition, it might be inadmissible under Rule 403 as more prejudicial than probative.

4. In *McKennon*, an employee alleged her employer fired her based on her age in violation of the Age Discrimination in Employment Act. *Id.* at 357–59, 115 S.Ct. 879. During discovery, the employer learned the employee had committed several violations of company poli-

cy for which she could have been terminated. *Id.* at 359, 115 S.Ct. 879. However, because the employee's "misconduct was not discovered until after she had been fired[,] [t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *Id.* at 539–60, 115 S.Ct. 879. Therefore, the employee could recover limited back pay, but front pay and reinstatement were unavailable.

statement and front pay are unavailable and backpay is limited. *Id.* at 361–62, 115 S.Ct. 879.[5] In such situations, backpay is calculated "from the date of the unlawful discharge to the date the new information was discovered." *Id.* However, "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *Id.* at 359–60, 115 S.Ct. 879. Therefore, after-acquired evidence does not defeat liability. *Id.*

Here, Defendant argues Murillo failed to disclose her most recent employer, Burger King, and Defendant would not have hired Murillo had she been truthful in her application.[6] Defendant alleges Murillo "walked out" on her job at Burger King. (*Id.*, at ¶ 9). Defendant argues had it known this, it would not have hired Murillo. Murillo testified she did not "walk out" on her job at Burger King, but instead gave notice she was leaving her employment. (Doc. 126, at ¶ 57). Murillo also testified she informed Defendant's store manager of her prior employment at Burger King. (Doc. 113, at ¶ 18).

Defendant's after-acquired evidence affirmative defense is moot. The after-acquired evidence rule prohibits front pay and reinstatement, and cuts off backpay damages on the date Defendant learns of the new evidence. Plaintiff, however, is only seeking backpay with prejudgment interest for a seven week period starting from the date Defendant discriminated against Murillo in May 2006. (E.g., Doc. 125, at 13–14).[7] Defendant did not learn about Murillo's alleged failure to include Burger King on her job application until after September 30, 2008. (Doc. 113, at Ex. 1, ¶ 10). Thus, by the time Defendant learned about the after-acquired evidence, the backpay calculation had long been cut off. As such, the after-acquired evidence affirmative defense is moot because Plaintiff is not seeking front pay, reinstatement, or backpay beyond the date Defendant learned about the after-acquired evidence. Accordingly, Plaintiff's motion for summary judgment will be granted and Defendant's motion for summary judgment will be denied as moot on the after-acquired evidence affirmative defense.[8]

### 3. Failure to Mitigate

 Plaintiff moves for summary judgment on Defendant's failure to mitigate affirmative defense. Defendant bears the burden of proving Murillo failed to mitigate her damages. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.1978). To establish this affirmative de-

---

5. The employer must show it would have terminated the plaintiff, not simply that it could have done so. "The inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals .... '[P]roving that the same decision would have been justified ... is not the same as proving that the same decision would have been made.'" *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759–60 (9th Cir.1996) (employer's burden is preponderance of the evidence).

6. Defendant's job application, which Murillo completed, requires applicants to identify their most recent employer, position and rea-

son for leaving. Defendant's job application also requires applicants "certify" they have provided correct information and they understand any omission or false information is grounds for dismissal. (Doc. 113, at ¶ 14).

7. Plaintiff asserts backpay is owed from May 9, 2006 to June 30, 2006. (Doc. 125, at 13–14).

8. Defendant's reply in support of its motion for summary judgment did not address the after-acquired evidence affirmative defense, let alone refute Plaintiff's argument that the after-acquired evidence affirmative defense is moot.

fense, Defendant must prove: (1) there were suitable positions available for Murillo; and (2) she failed to use reasonable care and diligence in seeking out those positions. *Jackson v. Shell Oil,* 702 F.2d 197, 202 (9th Cir.1983); *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir.1994).

 Defendant has pointed to multiple businesses located in the vicinity of the Store. Defendants argue Murillo failed to mitigate her damages because she did not apply to these businesses. However, Defendant must show there were positions available for Murillo during the relevant time period, not simply that there were businesses nearby. In its response, Defendant states "[a]t trial, [Defendant] will demonstrate the availability of open positions in the fast food industry" during the relevant time period. (Doc. 128, at 16). The time to present such evidence is now. Defendant must present admissible evidence to defeat summary judgment. It has not done so. Summary judgment will be granted in favor of Plaintiff on Defendant's failure to mitigate defense because Defendant has failed to demonstrate a genuine issue of material fact as to the first requirement of this affirmative defense.

### 4. Conciliation

The parties filed cross-motions for summary judgment on failure to conciliate. In light of the Court's prior ruling staying the case for conciliation (Doc. 139), and the parties' subsequent conciliation efforts (*See* Doc. 146), Plaintiff's motion for summary judgment prohibiting Defendant from arguing failure to conciliate as an affirmative defense will be granted, and Defendant's motion for summary judgment for failure to conciliate will be denied.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Partial Summary Judgment (**Doc. 110**) is **GRANTED.**

**IT IS ORDERED** Defendant's Motion for Partial Summary Judgment (**Doc. 112**) is **DENIED.**

**IT IS ORDERED** the parties shall appear for a status hearing on July 29, 2011 at 10:30 a.m. The parties shall file a joint status report one week prior to the status hearing.